[Civ. No. 14929.  First Dist., Div. Two.  Jan. 31, 1952.]

Estate of RUPERT G. WEDEMEYER, Deceased.

Estate of EMMA W. WEDEMEYER, Deceased.

ROLAND C. WEDEMEYER et al.. Appellants, v. ETHEL W. SULLIVAN, as Administratrix, etc., Respondent.

James P. Prcovolos for Appellants.

Edward J. Lynch for Respondent.

NOURSE, P. J.—This appeal involves an interpretation of the Uniform Simultaneous Death Act (Prob. Code, §§ 296-296.8) enacted in 1945 to repeal section 1963, subdivision 40 of the Code of Civil Procedure which created a disputable

presumption as to survivorship when two persons met death in the same calamity.

Rupert G. Wedemeyer and his wife were instantly killed in an airplane accident in Scotland, October 21, 1948. Rupert left as heirs his two brothers and one sister, who are the appellants herein. The wife left as her sole heir her mother, who has since deceased. Her interest is represented by her administratrix, respondent herein. Both husband and wife died intestate and the controversy here relates solely to the disposition of the proceeds of four insurance policies on the life of the husband.

Three of the policies totalling approximately $80,000 named the wife as sole beneficiary and, in event of her death, the proceeds were to be paid to the husband's administrator or estate. The fourth in the sum of $19,100 named no beneficiary, the proceeds being made payable to the husband's estate. All the premiums on all four policies had been paid out of community funds.

Proceedings to probate both estates were held at the same time. Identical decrees of partial distribution in both estates determined that one half of the proceeds of the four policies was distributable to the heirs of Rupert and left the determination of the right to the remaining one half to further proceedings. Pursuant to order of the court the insurance money was jointly collected by the administrators of both estates. Identical petitions for the determination of heirship with respect to the half of the insurance money not disposed of were filed in both estates. After a consolidated hearing the court by identical orders in both estates determined that the wife's mother was entitled to the remaining one half of the proceeds of all four policies. The consolidated appeals are presented on nearly identical agreed statements.

The appeal presents the question whether the Simultaneous Death Act changes the character of the proceeds of policies of insurance where the premiums were paid entirely from community funds. Concretely the question is whether, when all premiums on the policies are paid with community funds, the proceeds should be distributed in accordance with section 228 of the Probate Code or whether, under circumstances arising under section 296.3 of that code the provisions of the earlier section are suspended.

The following sections of the Probate Code are involved:

Section 201: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

Section 228: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest . . . such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation."

Section 296.3: "Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary."

Section 296.4: "Where a husband and wife have died, leaving community property and there is no sufficient evidence that they have died otherwise than simultaneously, one-half of all the community property shall be distributed as if the husband had survived and the other one-half thereof shall be distributed as if the wife had survived: except as provided in Section 296.3."

We find nothing conflicting in these sections and no indication that the later sections 296.3 and 296.4 were intended to supersede the earlier sections cited in any respect. ██ "It is well established that the repeal of statutes by implication is not favored (see 23 Cal.Jur. § 84, p. 694) and that statutes relating to the same subject are to be construed together and harmonized if possible. (*People* v. *Trieber,* 28 Cal.2d 657, 661 [171 P.2d 1] ; 2 Sutherland, Statutory Con-

struction, § 5201, p. 531.)'' (*Ebert* v. *State,* 33 Cal.2d 502, 509 [202 P.2d 1022].) Sections 296.3 and 296.4 do not purport to do anything but solve the difficulty caused by the simultaneous or nearly simultaneous character of the deaths by providing who for purpose of distribution is considered to have died first. The person or persons who are to succeed are not designated in these sections and must be found in the other sections cited. In this manner the four sections can be construed together harmoniously and must be so construed as follows:

■ During the life of the spouses the choses in action represented by the policies belonged to the community because of the fact that community funds had been paid as the consideration for their acquisition. The insured owned the property as a community asset. (*New York L. Ins. Co.* v. *Bank of Italy,* 60 Cal.App. 602, 606 [214 P. 61]; *Estate of Castagnola,* 68 Cal.App. 732, 737 [230 P. 188]; *Travelers Ins. Co.* v. *Fancher,* 219 Cal. 351, 353 [26 P.2d 482]; *Grimm* v. *Grimm,* 26 Cal.2d 173, 175 [157 P.2d 841].)

■ With respect to the three policies in which the wife was the first beneficiary, section 296.3, *supra,* of the Probate Code is applicable and the applicability of section 296.4, *supra,* expressly excluded. At the death of the wife, which is considered according to section 296.3 to have preceded that of the husband, the husband took the choses in action under section 201, Probate Code. At his death, which is considered to have occurred subsequently, the proceeds of the policies which took the place of the choses in action had to be distributed in his estate in accordance with section 228, *supra,* because they had been community property of the husband and his wife who is considered to have predeceased him and they went to him by virtue of the community character on the presumed prior death of the wife. ■ At the death of the wife her appointment as beneficiary lapsed and the provision in behalf of the husband's estate became operative, but, as we held in *Estate of Castagnola,* 68 Cal. App. 732, 737 [230 P. 188], such did not change the character of the property and made no difference as to the applicability of section 228, Probate Code (then Civ. Code, § 1386, subd. 8).

In the Castagnola case this court said (p. 737) : ''The policy of insurance being a chose in action which was community property of the parties during their coverture, the proceeds of the policy would retain their community character, not-

withstanding the fact that they were paid after the dissolution of the community. When, therefore, the husband designated his estate as beneficiary in the event of the death of his wife it will not be presumed that he intended to change the character of the property from community to separate property, but it will be assumed, in the absence of any showing to the contrary, that he merely intended to designate his general estate as the successor to the proceeds of the policy.''

█ With respect to the fourth policy in which the wife was not a beneficiary not section 296.3 but section 296.4, Probate Code is applicable. In accordance with that section the half of the chose in action which is distributed as if the wife died first goes at her death to the husband under section 201, Probate Code, and its ultimate distribution takes place under section 228, Probate Code, as shown with respect to the other policies. Conversely the proceeds of the half which is to be distributed as if the husband died first goes to the wife under section 201, Probate Code, at the time of the husband's death and at her death, which is considered subsequent, is distributed in accordance with section 228, Probate Code. (Compare for the general tendency to bring any benefit received by a spouse from an insurance policy paid for with community funds under section 228, Probate Code, *Estate of Perkins*, 21 Cal.2d 561, 571 [134 P.2d 231]; *Estate of Rattray*, 13 Cal.2d 702, 716 [91 P.2d 1042], disapproving *Estate of Miller*, 23 Cal.App.2d 16 [71 P.2d 1117], and *Estate of Lissner*, 27 Cal.App.2d 570 [81 P.2d 448].) The result with respect to the fourth policy is therefore the same as with respect to the other three.

As the husband's estate was entitled to the proceeds of all policies the decree determining heirship made in the wife's estate may well be superfluous. However the proceeds of the policies were jointly collected by both administrators, identical steps have all along been taken in both estates and appellant does not assign the making of two orders as error. We therefore see no reason to reverse the order made in the wife's estate.

Orders affirmed.

Jones, J. pro tem., concurred.

GOODELL, J.—I dissent.

Decedent Rupert G. Wedemeyer left neither spouse nor issue hence there are but two sections in the Probate Code

which could possibly apply, namely sections 225 and 228.

The prevailing opinion holds in substance that section 228 is controlling because the premiums had been paid out of community funds and the proceeds retained a community character after the beneficiary's death had dissolved the community. Section 228 is a reenactment of section 1386, subdivision 8, Civil Code, and the theory underlying that section was, as the Supreme Court said in *Estate of Brady,* 171 Cal. 1, 3 [151 P. 275], "to provide for the inheritance of the property equally by the respective families of the two spouses by whose efforts it was accumulated."

Section 228 distributes in *two lines of succession—one half to the family of each spouse.*

In 1945 section 296.4, Probate Code, was enacted, and when it says that distribution shall be "one-half . . . as if the husband had survived and the other one-half . . . as if the wife had survived" it, likewise, directs distribution *in two lines of succession—one-half to the family of each spouse.*

Section 296.4, however, contains an exception which cannot be ignored; it must be given some meaning. It says: "except as provided in Section 296.3."

The present litigation presents a set of facts squarely within section 296.3, since the husband was the insured, the wife the beneficiary, and both died at the same time. The exception in § 296.4 sends you to section 296.3, the language of which is in sharp contrast with that of section 296.4. Section 296.3 provides that the distribution of life insurance proceeds shall be "as if the insured survived." If section 296.4 directs distribution *in two lines of succession* and life insurance (in the contingency existing here) is removed from the operation of section 296.4 by the exception, the purpose of the Legislature seems to be that life insurance proceeds (within the contingency named in §§ 296.3 and 296.4) should be distributed *otherwise than in two lines of succession.*

If such had not been its purpose, all the Legislature had to do was omit the exception from section 296.4 and tack it onto section 296.3, or by other appropriate language indicate that life insurance impressed with a community character should be distributed the same as all other community property.

If the prevailing opinion is correct in holding that the distribution is governed by section 228, then precisely the same result is reached as if the distribution were to be made

as directed by section 296.4—*in two lines of succession* one half to the family of each spouse—*a result which the Legislature by the exception which it wrote into section 296.4 manifestly intended to prevent.*

It is not necessary to say whether or not sections 296.3 and 296.4 are laws of succession. True, they do not prescribe the heirs entitled to succeeed, but it cannot be gainsaid that they do superimpose new rules on the old succession sections and thus modify them.

The views now expressed do not touch in any way the settled rule of *New York Life Ins. Co.* v. *Bank of Italy,* 60 Cal.App. 602 [214 P. 61], and similar cases. That rule, as all the cases show, was designed to safeguard the rights of a wife during her lifetime, in her half of life insurance paid for with community funds. Emma Wedemeyer's community rights were never in jeopardy, since her husband had made her the beneficiary of three of the policies and had made the fourth payable to his estate, not to some other person. And if the Legislature decided to remove life insurance (formerly impressed with a community character) from the realm of community property in cases where the beneficiary predeceases the insured, that was well within its power. (*Estate of Perkins,* 21 Cal.2d 561, 569 [134 P.2d 231] ; 9 Cal.Jur., pp. 450-451.)

Since, in my opinion, section 228 does not apply, then the proceeds of the three policies wherein Emma Wedemeyer was the beneficiary should be distributed as separate property pursuant to section 225, Probate Code, which reads: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to his brothers and sisters and to the descendants of deceased brothers and sisters by right of representation."

The foregoing discussion has to do only with the first three policies. The exception in section 296.4 cannot, of course, be stretched beyond its own language. Such exception is confined to cases where there is a named beneficiary, hence it does not embrace the fourth policy, payable to the insured's estate,. for that policy presents no problem of simultaneous deaths. Accordingly (and consistently) I am satisfied that under *Estate of Castagnola,* 68 Cal.App. 732 [230 P. 188], decided by this court in 1924, the proceeds of the fourth policy should be distributed as any other community property would be. Section 296.4, the most recent enactment on

the subject, would send such proceeds in two lines of succession, one half to the husband's heirs and one half to the wife's, under section 225 Probate Code. The result, incidentally, as pointed out earlier, will be the same as if the distribution were under section 228.

The Castagnola case does not apply to the first three policies because of the enactment, 21 years after it was decided, of sections 296.3 and 296.4. Except for those sections it would be controlling herein as to the first three policies as well as the fourth.

Another matter should be noted. Three of the policies were payable to Emma as beneficiary or to the insured's executor, administrator or estate. If she died first, then none of the policies ever became payable to her. On Rupert's death the proceeds went into his estate, not by virtue of the laws of succession, but because of the plain terms of the insurance contracts themselves.

The proceeds of the fourth policy, payable directly to Rupert's estate, likewise became assets thereof under the contract and not by virtue of the laws of succession.

It follows that none of the insurance money went into Emma's estate, hence the order there in purporting to determine heirship with respect thereto was, to that extent, of no effect and in my opinion should be reversed.

I believe the order entered in Rupert's estate should also be reversed for the reasons stated above.

A petition for a rehearing was denied March 1, 1952, and appellants' petition for a hearing by the Supreme Court was denied March 27, 1952.