*1125
 
 OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 On Christmas Day 2003, Steven and Susan Maini, their two children, and Susan’s parents died in a plane crash at the North Las Vegas airport. This appeal arises out of a conflict between Susan’s brother and Steven’s brother, the administrators of Susan’s and Steven’s respective estates, over the distribution of the ownership interest in a Maini family company, respondent/cross-appellant Maini Distributing, Inc. (MDI), and the distribution of Susan’s life insurance policies’ proceeds. In this appeal, after determining that MDI was Steven’s separate property, we consider two issues of first impression in the context of determining the appropriate distribution of Susan’s life insurance proceeds.
 

 First, we consider whether a corporation may acquire an ownership interest in life insurance policies by paying the premiums. Although we conclude that a corporation may acquire such an interest under constructive trust and resulting trust principles, the facts in this case do not warrant the application of those doctrines. In so concluding, we also note that under the resulting trust doctrine a company acquiring equitable ownership of a life insurance policy must show that it has an insurable interest in the life of the insured to recover the proceeds. In this case, MDI made no such showing.
 

 Second, we consider the application of the Uniform Simultaneous Death Act. We determine that, in the case of simultaneous death, the Uniform Act applies to the distribution of property when a decedent’s will or life insurance policy provides for a property distribution that is the same as that provided for by the Uniform Act. When the Uniform Act applies, it creates a statutory presumption that an insured survived his or her simultaneously deceased beneficiaries.
 
 [2]
 
 This presumption controls the distribution of life insurance proceeds through the distribution of the insured’s estate even though the policy may be community property.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 The parties stipulated to several facts in this case, including that Steven and Susan Maini, their two children, and Susan’s parents were all killed simultaneously when their small airplane, piloted by Susan’s father, crashed at the North Las Vegas airport on Christmas Day 2003. After the accident, family members filed probate actions for each of the estates. Steven and the children died with
 
 *1126
 
 out valid wills. Susan had a valid will that was admitted into probate; however, none of her intended beneficiaries survived the crash. In probate, respondent/cross-appellant Michael Maini (Maini), Steven’s brother, was named the administrator and sole heir of Steven’s estate and appellant/cross-respondent Paul Wald-man, Susan’s brother, was named executor and sole heir of her estate. Although the brothers also took responsibility for the children’s estates, they raise no issues regarding those estates in this matter.
 

 The property to be distributed included a 95-percent ownership . interest in Steven’s family company, MDI. Steven’s father founded MDI in 1966 and ran the business until he died in 1973. After his father’s death, his mother inherited and ran MDI; when Steven graduated from high school, he joined MDI. After working at MDI for several years, and after his marriage to Susan, Steven’s mother gave him 90 percent of her ownership interest in MDI, although his mother remained actively involved in the business until her death. When she died, Maini and Steven each inherited half of her remaining 10-percent interest. Steven continued to work for MDI, and Susan worked as an accountant for the City of Las Vegas. Although Susan prepared MDI’s taxes and was named Vice President of MDI, MDI did not pay Susan a salary.
 

 The other assets at issue in the appeal are the proceeds from two life insurance policies held by Susan. She obtained one policy through her membership in the American Institute of Certified Public Accountants (the Prudential policy) and another policy from Jackson National Life Insurance (the Jackson policy). The Prudential policy was for $500,000 but paid an additional $500,000 for accidental death. The Jackson policy was for $100,000. MDI paid all of the premiums on the insurance policies. Each policy stated that if any beneficiary failed to survive the insured, the proceeds would be paid to the insured’s estate. Both policies listed Steven as the beneficiary, and the Jackson policy listed Susan’s father as the secondary beneficiary.
 

 In probate, Maini, on behalf of MDI and Steven’s estate, filed two creditor claims against Susan’s estate for proceeds from the Jackson and Prudential insurance policies on her life. MDI’s creditor claim stated that Susan’s estate owed MDI the full amount of the insurance benefits ($1,100,000) because MDI paid all of the premiums. Alternatively, Maini made a creditor claim on behalf of Steven’s estate, arguing that the insurance proceeds were community property and thus Susan’s estate owed Steven’s estate half of the proceeds. Waldman denied both claims for the proceeds.
 

 After Waldman denied the claims, Maini and MDI filed a complaint in district court seeking the following relief: (1) payment to
 
 *1127
 
 MDI of all of Susan’s life insurance proceeds, or payment of half of the life insurance proceeds to Steven’s estate; (2) declaratory relief stating that the Uniform Simultaneous Death Act did not apply to Susan’s estate or if it did apply that it did not affect Steven’s community property interest in Susan’s life insurance proceeds; and (3) declaratory relief stating that the 95-percent ownership interest in MDI was Steven’s separate property. Thereafter, Maini and MDI moved the district court for summary judgment, seeking a determination that MDI was entitled to the insurance proceeds. The district court denied the motion. However, Maini and MDI filed a subsequent motion for partial summary judgment, seeking a determination that the Uniform Act did not apply to the Prudential or Jackson policies. The court granted the motion.
 

 The parties then proceeded to a bench trial on the remaining issues. The court ultimately ruled that the life insurance proceeds and the 95-percent ownership interest in MDI were all community property and awarded half of each to each spouse’s estate. This appeal and cross-appeal followed.
 

 DISCUSSION
 

 In this opinion, we first address Maini’s argument on cross-appeal that the district court erred when it determined that the ownership interest in MDI was community property. We conclude that the district court misapplied the presumptions concerning separate and community property. Properly applying those principles, the MDI ownership interest was presumptively Steven’s separate property, as he acquired that interest by gift and devise. Next, we address whether MDI acquired equitable ownership of Susan’s life insurance policies by paying the premiums. While in some instances a corporation may acquire equitable ownership of a life insurance policy through such remedies as constructive and resulting trusts, the facts of this case do not support the imposition of those equitable remedies. Moreover, we reject MDI’s claim that it acquired a resulting trust in Susan’s policies, as NRS 687B.040 prohibits MDI from obtaining insurance on her life under the circumstances of this case. Finally, we consider as a matter of first impression the application of the Uniform Simultaneous Death Act to the division of Susan’s life insurance proceeds. The Uniform Act applies when the distribution of a decedent’s property under an insurance policy or will is the same as the distribution provided for in the Act. Because that is the case here, we conclude that the Uniform Act governs the distribution of Susan’s life insurance proceeds in accordance with the Act. Since Susan presumptively survived Steven, all of the proceeds of her life insurance policies must be distributed to her estate. We therefore affirm in part and reverse in part the district court’s judgment.
 

 
 *1128
 

 The district court erred when it concluded that the ownership interest in MDI was community property
 

 On cross-appeal, Maini contends that the district court erred when it determined that Steven’s ownership interest in MDI was community property. Specifically, Maini argues that the MDI ownership interest was Steven’s separate property because 90 percent of the ownership interest was a gift to Steven from his mother and Steven inherited the other 5-percent ownership interest from her. Waldman presented no contrary evidence but argues that the MDI interest was presumed to be a community asset because Steven acquired it during the marriage. The district court found that Maini had failed to prove that the gift was not a gift to the community and therefore that the MDI interest was community property. We conclude that the district court improperly applied the community property presumption and Maini established that the MDI interest was a separate property asset.
 

 When reviewing a district court’s determination of the character of property, this court will uphold the district court’s decision if it was based on substantial evidence.
 
 [3]
 
 However, we will review a purely legal question, such as the application of a presumption, de novo.
 
 [4]
 

 This court has long applied a presumption that all property acquired during marriage is community property.
 
 [5]
 
 However, property acquired during a marriage by gift, bequest, or devise is presumptively the recipient’s separate property.
 
 [6]
 
 In this case, the district court incorrectly presumed that the 95-percent ownership interest in MDI was a gift to the community. The correct presumption was that the ownership interest was Steven’s separate property because it was acquired by him primarily by gift and in part by devise.
 

 Although Waldman could have attempted to rebut the separate property presumption and argue that the MDI ownership interest was community property, he failed to offer any evidence supporting such a conclusion. Indeed, at the bench trial, Waldman offered no evidence beyond the stipulated facts. The only evidence adduced
 
 *1129
 
 at trial supports the contention that the 90-percent MDI ownership was a gift to Steven from his mother, and that the 5-percent ownership interest was acquired by descent after his mother died intestate. Although record evidence demonstrates that Susan performed tasks for MDI, no evidence suggests that she held an ownership interest in the corporation or that Steven transmuted his MDI ownership interest into community property. Therefore, because MDI was presumptively Steven’s separate property, and Waldman offered no evidence to rebut that presumption, we reverse the district court’s judgment to the extent the court determined that the MDI ownership interest was community property.
 

 The district court properly held that MDI did not acquire an ownership interest in Susan’s life insurance proceeds
 

 Maini contends that MDI is the owner of Susan’s life insurance policies and thus entitled to the policies’ proceeds because MDI paid the policy premiums and Susan, in filing MDI’s and her own tax returns, claimed the premiums as business expenses for MDI but not as income for herself. Moreover, given that Susan was MDI’s vice president and certified public accountant (CPA), Maini and MDI argue that MDI had an insurable interest in Susan under NRS 687B.040, which generally requires a substantial economic interest in a person’s life before insurance on the person’s life may validly be procured. Maini further argues that awarding the proceeds to Susan’s heirs would unjustly enrich them with corporate funds. Waldman responds that a corporation does not obtain an ownership interest in an insurance policy simply by paying the policy premiums, absent fraud against the corporation’s creditors. He also asserts that there was no evidence that Susan purchased the policies on behalf of MDI or intended them to benefit MDI. We agree that MDI did not acquire an ownership interest in Susan’s life insurance policies, despite its payment of the premiums.
 

 In a matter concerning probate, we defer to a district court’s findings of fact and will only disturb them if they are not supported by substantial evidence.
 
 [7]
 
 On matters of statutory interpretation, however, we review the district court’s decision de novo.
 
 [8]
 
 Because we treat probate matters in the same manner as all other civil cases,
 
 [9]
 
 we review any purely legal question in a probate matter de
 
 *1130
 
 novo
 
 [10]
 
 and give deference to the district court’s findings of fact.
 
 [11]
 
 Whether MDI could acquire an ownership interest in Susan’s life insurance policies by paying the premiums is a question of law subject to de novo review;
 
 [12]
 
 however, we defer to the district court’s factual findings regarding the imposition of an equitable trust.
 
 [13]
 

 Whether a corporation may acquire an ownership interest in life insurance policy proceeds by paying the policy premiums is an issue of first impression for this court. Maini cites to authority from Texas and other states for the proposition that use of corporate funds to pay the premiums of an insurance policy creates an ownership interest in the company, held by the beneficiary in constructive trust for the company. Maini argues for a constructive trust under two lines of cases. In one line of cases, courts imposed constructive trusts in favor of corporations because the corporate funds used to procure insurance were obtained through fraud or bad faith.
 
 [14]
 
 In the second line of cases, the courts imposed trusts in the absence of any bad faith or fraud.
 
 [15]
 
 The reasoning in the second line of cases is analogous to Nevada’s principles for imposing resulting trusts, trusts implied from the actions and intent of the parties. Therefore, our analysis considers whether a constructive or resulting trust is an available remedy.
 

 To determine whether MDI has an ownership interest in the life insurance proceeds, we must consider: whether Susan’s actions created a constructive or resulting trust, if any, in favor of MDI; and whether NRS 687B.040 prevents MDI from owning insurance on Susan’s life unless it had an insurable interest in her life.
 
 [16]
 

 The payment of insurance premiums by MDI did not create a constructive trust in favor of MDI
 

 In a majority of jurisdictions, courts impose constructive trusts upon life insurance proceeds if the life insurance policy is pur
 
 *1131
 
 chased with embezzled or otherwise fraudulently obtained funds.
 
 [17]
 
 The Texas Court of Appeals, in
 
 Marineau v. General American Life Insurance,
 
 determined “that a person who wrongfully uses stolen or fraudulently obtained funds to purchase an insurance policy shall hold that policy and its proceeds in trust for the benefit of the one from whom the funds were stolen or taken.”
 
 [18]
 
 The basis for this rule in a majority of jurisdictions comes from the equitable remedy of constructive trust.
 
 [19]
 

 In Nevada, imposition of a constructive trust requires: “(1) [that] a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice.”
 
 [20]
 
 The requirement that a confidential relationship exist is based on the idea that the existence of the relationship creates an inference of fraud or undue influence when property is obtained without consideration.
 
 [21]
 
 We have stated, however, that constructive trust as a remedy is not “ ‘limited to [fraud and] misconduct, cases; it redresses unjust enrichment, not wrongdoing.’ ”
 
 [22]
 

 For example, in
 
 Bemis
 
 v.
 
 Estate ofBemis,
 
 we held that no fraud was required to impose a constructive trust.
 
 [23]
 
 In that case, a father
 
 *1132
 
 and mother agreed in their divorce settlement that the father would create a trust in favor of their two sons in the amount of $25,000.
 
 [24]
 
 The father never established the trust or provided financial assistance to the boys.
 
 [25]
 
 We determined that we could not impose a resulting trust because the father had never demonstrated intent to adhere to his agreement and create the trust.
 
 [26]
 
 However, we imposed a constructive trust upon the father’s estate because, in reference to the second two factors, the father inequitably failed to create the trust he had promised to create, and his estate would unjustly benefit from that inequitable act.
 
 [27]
 

 In this case, the parties stipulated that MDI paid all of the premiums for the life insurance policies. Maini does not allege that Susan fraudulently used MDI funds to pay the premiums; he alleges only that she should have reported the premium payments as income. Maini argues that imposition of a constructive trust is proper in this situation under Nevada law solely because Steven and Susan used corporate funds to purchase the policies and it would be inequitable to permit their heirs to hold the proceeds rather than MDI. Waldman replies that Susan’s use of corporate funds to pay the premiums without reporting the payments as income was not a fraud against the corporation or its creditors, and while it may have been a mistake not to claim the premiums as income under federal income tax laws, it was not a detriment to MDI.
 

 This situation does not warrant the imposition of a constructive trust. Maini fails to establish an inequitable act or result similar to that in
 
 Bemis.
 
 While Nevada may not require fraud, we have thus far at least required unjust enrichment before imposing a constructive trust.
 
 [28]
 
 Absent any evidence of an agreement or understanding that MDI would receive Susan’s policies’ proceeds, Maini fails to demonstrate how Susan’s estate would be unjustly enriched by retaining the proceeds from the policies.
 
 [29]
 
 No evidence suggests that MDI has a greater claim to the proceeds of the life insurance than Susan’s estate.
 

 
 *1133
 

 The payment of insurance premiums by MDI did not create a resulting trust in favor of MDI
 

 In the second line of cases cited by Maini, courts imposed trusts on life insurance proceeds when the policies were purchased by a corporation with the intent to benefit the corporation and premiums were paid with corporate assets.
 
 [30]
 
 In these cases, courts focus on the intent of the parties when the insurance was obtained. When the facts indicate that the insurance policies were purchased to benefit the corporation, either as an asset or to prevent injury to the corporation upon the death of an important officer, courts have imposed implied trusts to honor the parties’ intent notwithstanding the named beneficiary or the parties’ tax filings.
 
 [31]
 

 Implying this type of equitable remedy is in line with Nevada’s principles concerning resulting trusts. We have concluded that a resulting trust may be imposed when parties’ actions .or expressions indicate that they intended to create a trust relationship.
 
 [32]
 
 In this case, imposing a resulting trust on the insurance proceeds would be appropriate if the facts indicated that MDI intended to purchase insurance on Susan’s life to benefit MDI as an asset or as protection in the event of Susan’s death, subject to the limitations imposed by NRS 687B.040, discussed below.
 

 In this case, Maini adduced evidence that Susan and Steven purchased life insurance for themselves and their two children. MDI paid all of the premiums for the insurance policies and listed those premium payments as business expenses in its tax filings.
 
 *1134
 
 Maini further offered evidence that Susan prepared the tax filings for both MDI and for herself and Steven, and never listed the premium payments as income to her or Steven. Thus, on appeal, Maini argues that these tax filings are Susan’s sworn statements that the policies were intended to benefit MDI.
 
 [33]
 
 However, each of Susan’s insurance policies listed Steven as the beneficiary.
 

 No evidence in the record suggests that there was an agreement or intent on behalf of MDI, Susan, or Steven to purchase the insurance to benefit MDI. MDI was not named as the beneficiary of the policies and no evidence was adduced that MDI treated the policies as its assets — either by listing them as assets on its tax returns or by borrowing money with the policies as security. Thus, the district court did not abuse its discretion when it determined that MDI was not entitled to the proceeds from Susan’s life insurance policies.
 

 NRS 687B.040 precluded MDI from obtaining insurance on Susan’s life
 

 Even if the facts in this case were sufficient to establish a resulting trust benefiting MDI, MDI was precluded by NRS 687B.040 from receiving the benefits of the insurance on Susan’s life. NRS 687B.040 requires MDI to have an insurable interest in Susan before procuring interest in her life. Under NRS 687B.040(1), a person may insure his or her life and name any beneficiary he or she chooses without regard to whether the beneficiary has an insurable interest in the insured, but a person who obtains life insurance on the life of another must name as a beneficiary either the insured or a person with an insurable interest in the insured. Thus, if there were facts sufficient to impose a trust on Susan’s estate, making MDI the equitable owner of Susan’s life insurance policy, to receive the proceeds MDI would have to prove that at the time the contract for insurance was entered it had an insurable interest in Susan’s life.
 

 “Insurable interest” for persons not having a close familial relationship is defined in NRS 687B.040(3)(b) as “a lawful and substantial economic interest in having the life, health or bodily safety of the person insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the person insured.” Maini argued to the district court that MDI had an insurable interest in
 
 *1135
 
 Susan’s life because of the important roles Susan played as MDI’s vice president, CPA, and bookkeeper. Maini also argues on appeal that Susan’s life was not endangered by allowing MDI to own a policy insuring her life.
 

 In other jurisdictions, a “substantial economic interest” has been found when the corporation would suffer pecuniary loss if the employee died, or the employee is crucial to the ordinary function of the corporation.
 
 [34]
 
 In Texas, a corporation does not have an insurable interest in an employee if, on balance, the corporation would profit more from the insured’s death than his or her life.
 
 [35]
 

 Although Maini asserts that MDI clearly had a “substantial economic interest” in Susan, the district court concluded that MDI was not entitled to the proceeds. We agree with the district court that MDI did not have an insurable interest in Susan’s life. Susan was an officer of the corporation but did not own any stock in MDI. She never worked solely for MDI, nor did she receive a salary from MDI. MDI thus benefited by receiving unpaid-for labor when it would otherwise have had to pay a bookkeeper or CPA. However, upon Susan’s accidental death, her beneficiary received $1,100,000. Logically, this payment is more than it would cost MDI to pay someone else to perform Susan’s role. During trial, Waldman testified that his estimate of MDI’s total value was either $300,000 or $600,000. Even if Waldman’s estimate was inaccurate, the payment of over $1 million to a small corporation to help replace its tax preparer would be significant. Therefore, MDI would profit more from Susan’s death than by her life and did not have an insurable interest in her life.
 

 In conclusion, although certain situations may give rise to constructive or resulting trusts on insurance proceeds paid on policies for which a corporation pays the premiums, the facts of this case do not warrant those remedies. Even if the facts could support a conclusion that a resulting trust was appropriate, because MDI did not have an insurable interest in Susan, NRS 687B.040 prohibits MDI from obtaining insurance on her life. Therefore, we affirm the district court’s judgment that MDI had no recognizable claim to the proceeds of Susan’s life insurance policies.
 

 The district court erred in its application of the Uniform Simultaneous Death Act and its division of Susan’s life insurance proceeds
 

 After determining that MDI had no claim to the proceeds of Susan’s life insurance, the district court held that the proceeds
 
 *1136
 
 were community property and ordered them divided equally between Susan’s and Steven’s estates. The district court’s determination that the proceeds are community property was based on its earlier summary judgment ruling that the Uniform Simultaneous Death Act did not apply to the insurance policies.
 

 Waldman argues that the district court erred by granting summary judgment in favor of Maini on the ground that NRS 135.050, the section of the Uniform Simultaneous Death Act concerning life insurance policies, did not govern the distribution of Susan’s life insurance proceeds. Waldman argues that either the Uniform Act or Susan’s life insurance contracts and will prohibited the district court from dividing the insurance proceeds as a community asset.
 

 Waldman assigns error both to the district court’s final judgment and to its earlier summary judgment. This court reviews a district court’s grant of summary judgment de novo.
 
 [36]
 
 Summary judgment is only appropriate where the evidence does not present any issues of material fact and the law requires judgment for the moving party.
 
 [37]
 
 In reviewing a district court’s decision to grant or deny summary judgment, this court construes the factual basis for the decision in favor of the nonmoving party.
 
 [38]
 
 And, as noted, in regard to the final decision of the district court, we review questions of law, such as statutory interpretation, de novo
 
 [39]
 
 and defer to the court’s factual findings.
 
 [40]
 

 Although Nevada enacted the Uniform Act in 1943, this court has never addressed any of the Act’s provisions. Because the Act is a uniform act applied in many states, the jurisprudence of sister jurisdictions applying the Uniform Act is highly persuasive.
 
 [41]
 
 The two primary issues raised in this case in regard to the Uniform Act are: (1) whether the Act applies to Susan’s life insurance policies and her estate based on her will, and, if so, (2) whether the Act’s requirement, under NRS 135.050, that insurance proceeds be distributed as if the insured had survived the beneficiary prevents the court from holding that the insurance proceeds are community property and dividing the proceeds between the estates.
 

 
 *1137
 

 The district court erred when it determined that the Uniform Act did not apply to Susan’s assets
 

 Waldman argues that the Uniform Act should apply to the distribution of Susan’s life insurance proceeds because neither in her will nor in the insurance contracts did Susan provide for a distribution that was different from the provisions of the Uniform Act. Maini argues that the Uniform Act does not apply because by requiring that the beneficiaries of her will survive her by 30 days, Susan’s will provided for simultaneous death in a manner different from that provided for by the Uniform Act.
 

 Under NRS 135.080, the Uniform Act does not apply to the distribution of property if the decedent provides for a different property distribution in a will or contract. NRS 135.080 provides: “This chapter does not apply in the case of wills, living trusts, deeds, or contracts in which provision has been made for distribution of property different from the provisions of this chapter.’ ’ When interpreting a statute, this court looks first to the statute’s plain language and, only if it finds an ambiguity, will it look beyond the language to determine legislative intent.
 
 [42]
 
 If the court finds an ambiguity, it looks to the statute’s context to effectuate the legislative intent behind the statute.
 
 [43]
 

 NRS 135.080’s plain language instructs that the Uniform Act does not apply if the decedent has provided for a distribution of his or her property that is different from the distribution provided for in the Uniform Act. Thus, a will or contract that provides for a different term for survivorship does not negate the application of the Uniform Act unless the property would be distributed differently than it would be distributed under the Act. This conclusion is supported by our sister jurisdictions’ interpretations of the Uniform Act.
 
 [44]
 
 Therefore, in this case, the Uniform Act applied to the distribution of Susan’s estate unless she provided for a different distribution of property in her life insurance policies or will.
 

 NRS 135.050, the section of the Uniform Act that determines the distribution of insurance proceeds, provides: “Where the insured and the beneficiary in a policy of life or accident insurance
 
 *1138
 
 have died and there is insufficient evidence that they died otherwise than simultaneously, the proceeds of the policy must be distributed as if the insured had survived the beneficiary.” In this case, the Prudential policy neither mentioned simultaneous death nor a survivorship term, but provided that the proceeds would be paid to the insured’s estate if no beneficiary survived Susan. Because the Prudential policy had no terms that pertained to the event of simultaneous death or contradicted the property distribution in the Uniform Act, the Act applied to the proceeds’ distribution.
 

 The Jackson policy also provided that if no beneficiary survived, the proceeds were payable to Susan’s estate. Under the terms of the Jackson policy, Susan’s beneficiaries had to survive her by at least ten days to take the proceeds, otherwise the beneficiary’s and Susan’s deaths were treated as occurring simultaneously and the proceeds were payable to Susan’s estate. Specifically, the Jackson policy provided the following:
 

 The interest of any Beneficiary who dies before the Insured will end at the death of the Beneficiary. The interest of any Beneficiary who dies at the time of or within ten days after the death of the Insured will also end if no proceeds have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the Insured.
 

 Under that provision, because none of Susan’s beneficiaries survived her by ten days, the proceeds would go to her estate. Application of NRS 135.050 would also result in the proceeds being paid to Susan’s estate. Thus, because the distribution of property under the Jackson policy and the Uniform Act did not differ, the Act also applied to the Jackson policy. Accordingly, the district court erred when it ruled that the Uniform Act did not apply to the Prudential and Jackson insurance policies’ proceeds in this case.
 

 As to the will, the district court found that Susan included a provision in the event that she and her beneficiaries died simultaneously; however, the will makes no mention of simultaneous death. The will did provide a 30-day survival requirement, under which Susan was deemed to have survived anyone who was not alive 30 days after her death. Therefore, she would be treated as the survivor of all of her family in the plane crash. Likewise, under NRS 135.020, Susan’s property under her will would be disposed of as though she had survived.
 
 [45]
 
 Because her will and the Uniform Act coincided as to property distribution, the Act also applied to Susan’s will.
 

 
 *1139
 

 Because the Uniform Act applies, the district court erred by dividing Susan’s life insurance proceeds as community property
 

 States applying the Uniform Act and following community property principles must determine whether the presumption of survivorship in the Uniform Act applies to distribution based on intestate succession principles or only to distribution as set forth in the insurance contract.
 
 [46]
 
 Waldman argues that this court should follow the reasoning of the Texas Supreme Court and hold that the language of the Uniform Act precludes division of life insurance proceeds as community property in the event that the beneficiary and the insured die simultaneously. Maini argues that the Legislature did not intend to change the character of community property or the manner in which it is distributed when it enacted the Uniform Act and, therefore, the Act allows for the equal division of the property.
 

 Courts applying the Uniform Act have determined that “the statutory survival of the insured spouse continues to the ultimate distribution of insurance proceeds.’ ’
 
 [47]
 
 This means that the Uniform Act’s survival presumption extends beyond the payment of insurance proceeds to an estate under the insurance contract, to the distribution of the estate through the specific state statutes providing for intestate succession.
 
 [48]
 
 Because of states’ differing statutes for intestate succession, the application of the same principle produces different results depending on the jurisdiction.
 
 [49]
 
 In each case, however, the courts distribute the asset under the statutory presumption that the insured is the survivor.
 
 [50]
 

 The district court found that the Prudential and Jackson policies were purchased with community funds, therefore, the proceeds
 
 *1140
 
 were a community asset.
 
 [51]
 
 Steven was the primary beneficiary on both policies and Susan’s father was a secondary beneficiary on one policy. When Susan and all of her beneficiaries died simultaneously, NRS 135.050 made Susan the presumed survivor, and the insurance companies paid the benefits to her estate.
 
 [52]
 
 But, because the proceeds were of a community property nature, Susan and Steven each had the right to devise half of the asset.
 
 [53]
 
 If Steven had possessed a valid will at the time of his death, his half of the insurance proceeds from Susan’s policies would have been distributed under his will, applying the presumption that Susan survived him under NRS 135.050. But, Steven did not have a valid will so Steven’s community property share of the proceeds were distributed under intestate succession, based on the presumption that Susan survived him. Under NRS 123.250(l)(b)(l), because Susan survived him, Steven’s half of the community property interest in the proceeds passed to Susan.
 

 Maini argues that application of the Uniform Act in this manner changes the character of community property. Courts in California and Texas addressed similar arguments and in each case dismissed the argument, holding that the Uniform Act did not change the community character of the property.
 
 [54]
 
 Although the Texas court recognized that the result seemed inequitable because it awarded a community asset entirely to the heirs of one spouse, it held that the
 
 *1141
 
 statute controlled the distribution and left no room for equity to apply.
 
 [55]
 
 Likewise, we are bound by the statutes to hold in this case that the proceeds vested in Susan’s estate. The survivor provisions in Susan’s life insurance contracts did not contradict the Uniform Act; therefore, the Act applied. Because the Uniform Act applied, distribution of the insurance proceeds had to be made with the statutory presumption that Susan survived Steven. Under NRS 123.250(l)(b)(l), all of the insurance proceeds vested in Susan’s estate and should have been distributed under her will. Thus, the district court erred when it divided the life insurance proceeds between the two estates.
 

 CONCLUSION
 

 Because the district court failed to apply the presumption that MDI was Steven’s separate property, we reverse its decision that MDI was community property and, because Waldman proffered no evidence to rebut the presumption, we conclude that MDI was Steven’s separate property. We affirm the district court’s decision that MDI was not entitled to Susan’s life insurance proceeds. Although constructive and resulting trusts may be appropriate remedies in some instances, the district court correctly concluded that the facts of this case do not support the imposition of those equitable remedies. However, we reverse the district court’s ultimate decision to distribute Susan’s life insurance proceeds equally to each estate because it incorrectly found that the Uniform Act did not apply to the distribution of the proceeds. Under the provisions of the Uniform Act, our intestacy statutes, and Susan’s will, the proceeds from her life insurance policies should have been distributed to Waldman as Susan’s ultimate residuary beneficiary.
 

 Gibbons, C. J., Maupin, Parraguirre, Douglas and Saitta, JL, and Shearing, Sr. J., concur.
 

 [2]
 

 See
 
 NRS 135.050.
 

 [3]
 

 Pryor
 
 v.
 
 Pryor,
 
 103 Nev. 148, 150, 734 P.2d 718, 720 (1987).
 

 [4]
 

 See Law Offices of Barry Levinson v. Milko,
 
 124 Nev. 355, 365, 184 P.3d 378, 386 (2008) (considering the application of a presumption as a legal question subject to de novo review).
 

 [5]
 

 Burdick v. Pope,
 
 90 Nev. 28, 29, 518 P.2d 146, 146-47 (1974).
 

 [6]
 

 See Smith
 
 v.
 
 Smith,
 
 94 Nev. 249, 251, 578 P.2d 319, 320 (1978) (citing NRS 123.130).
 

 [7]
 

 Close
 
 v.
 
 Flanary,
 
 77 Nev. 87, 93, 360 P.2d 259, 263 (1961).
 

 [8]
 

 Matter of Estate of Prestie,
 
 122 Nev. 807, 812, 138 P.3d 520, 523 (2006).
 

 [9]
 

 See
 
 NRS 155.180 (“Except as otherwise specifically provided in this title, all the provisions of law and the Nevada Rules of Civil Procedure regulating proceedings in civil cases apply in matters of probate .... The Nevada Rules of Appellate Procedure regulating appeals in civil cases apply to appeals taken pursuant to NRS 155.190.”); NRS 155.190 (allowing appeals from orders
 
 *1130
 
 which concern the payment of claims and the distribution of property);
 
 Close,
 
 77 Nev. at 93, 360 P.2d at 263 (treating an appeal from a probate matter as it would a case in law).
 

 [10]
 

 See Horgan
 
 v.
 
 Felton,
 
 123 Nev. 577, 581, 170 P.3d 982, 985 (2007) (“Pure legal issues are reviewed de novo.”).
 

 [11]
 

 See Close,
 
 77 Nev. at 93, 360 P.2d at 263.
 

 [12]
 

 See Horgan,
 
 123 Nev. at 581, 170 P.3d at 985.
 

 [13]
 

 See Close,
 
 77 Nev. at 93, 360 P.2d at 263.
 

 [14]
 

 See, e.g., Marineau
 
 v.
 
 General American Life Ins.,
 
 898 S.W.2d 397, 401 (Tex. App. 1995).
 

 [15]
 

 See, e.g., Wellhouse v. United Paper Co.,
 
 29 F.2d 886 (5th Cir. 1929);
 
 Penn Mut. L. Ins. Co. v. Bank of America Nat. T. & Sav. Ass’n,
 
 54 P.2d 453 (Cal. 1936);
 
 Boldemann Chocolate Co. v. Price,
 
 53 P.2d 946 (Cal. 1936);
 
 Gas-Ice Corporation
 
 v.
 
 Newbern,
 
 501 P.2d 1288 (Or. 1972).
 

 [16]
 

 NRS 687B.040 provides, in pertinent part:
 

 1. Any natural person of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of
 
 *1131
 
 any person. But a person shall not procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under the contract are payable to the person insured or his personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the person insured.
 

 3. As used in this section, “insurable interest” as to such personal insurance means that every person has an insurable interest in the life, body and health of himself, and of other persons as follows:
 

 (a) In the case of persons related closely by blood or by law, a substantial interest engendered by love and affection; and
 

 (b) In the case of other persons, a lawful and substantial economic interest in having the life, health or bodily safety of the person insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the person insured.
 

 [17]
 

 R.L. Mowson, Annotation,
 
 Right With Respect to Proceeds of Life Insurance of One Whose Funds Have Been Wrongfully Used to Pay Premiums,
 
 24 A.L.R.2d 672 (1952).
 

 [18]
 

 898 S.W.2d at 401.
 

 [19]
 

 Mowson,
 
 supra
 
 note 17.
 

 [20]
 

 Locken
 
 v.
 
 Locken,
 
 98 Nev. 369, 372, 650 P.2d 803, 804-05 (1982) (citing
 
 Schmidt
 
 v.
 
 Merriweather,
 
 82 Nev. 372, 375, 418 P.2d 991, 993 (1966)).
 

 [21]
 

 Schmidt,
 
 82 Nev. at 375-76, 418 P.2d at 993-94.
 

 [22]
 

 Bemis
 
 v.
 
 Estate of Bemis,
 
 114 Nev. 1021, 1027, 967 P.2d 437, 441 (1998) (alteration in original) (quoting 1 Dan B. Dobbs,
 
 Law of Remedies
 
 § 4.3(2) (2d ed. 1993)).
 

 [23]
 

 Id.
 

 [24]
 

 Id.
 
 at 1023, 967 P.2d at 439.
 

 [25]
 

 Id.
 

 [26]
 

 Id.
 
 at 1027 n.4, 967 P.2d at 441 n.4.
 

 [27]
 

 Id.
 
 at 1027-28, 967 P.2d at 442.
 

 [28]
 

 Id.
 
 at 1027, 967 P.2d at 441.
 

 [29]
 

 Maini argued at the district court that Waldman did not contribute to or know of the policies and therefore it would be inequitable if he inherited them. This argument is without merit. Nothing requires a beneficiary of a life insurance policy to know of the policy or contribute to payment of the premiums.
 

 [30]
 

 See Gas-Ice Corporation v. Newbern,
 
 501 P.2d 1288, 1292-93 (Or. 1972) (holding that where corporate funds had been used to purchase life insurance for an officer of the corporation in good faith but absent an agreement that the policies were the property of the officer, the policies became a corporate asset held by the officer in an implied trust for the corporation); Ferdinand S. Tinio, Annotation,
 
 Payment of Premiums by Corporation on Corporate Officer’s Life Insurance Policy as Affecting Right to Policy,
 
 56 A.L.R.3d 1086 (1974).
 

 [31]
 

 Gas-Ice Corporation,
 
 501 P.2d at 1289-93;
 
 Wellhouse v. United Paper Co.,
 
 29 F.2d 886, 886-87 (5th Cir. 1929);
 
 Penn Mut. L. Ins. Co. v. Bank of America Nat. T. & Sav. Ass’n,
 
 54 P.2d 453, 458-59 (Cal. 1936);
 
 Boldemann Chocolate Co.
 
 v.
 
 Price,
 
 53 P.2d 946, 946-48 (Cal. 1936).
 
 But see Proctor
 
 v.
 
 MacClaskey,
 
 179 N.E. 600, 601-02 (Mass. 1932) (holding that a corporation’s creditors could not reach the proceeds of a life insurance policy even though the corporation had made some of the premium payments because of two Massachusetts statutes limiting a creditor’s ability to reach insurance proceeds to situations where the person who first obtained the insurance made premium payments that defrauded his or her creditors).
 

 [32]
 

 Bemis,
 
 114 Nev. at 1027 n.4, 967 P.2d at 441 n.4.
 

 [33]
 

 See Henry
 
 v.
 
 Baber,
 
 75 Nev. 59, 62, 334 P.2d 839, 840 (1959) (holding that failure to report income on tax returns was a statement under oath that the declarant had not received the income).
 

 [34]
 

 44 C.J.S.
 
 Insurance
 
 § 371 (2007).
 

 [35]
 

 Tamez v. Certain Underwriters at Lloyd’s, 999
 
 S.W.2d 12, 17 (Tex. App. 1998).
 

 [36]
 

 Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.,
 
 123 Nev. 598, 602, 172 P.3d 131, 134 (2007).
 

 [37]
 

 Wood v. Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
 

 [38]
 

 Id.
 

 [39]
 

 See
 
 Horgan
 
 v.
 
 Felton,
 
 123 Nev. 577, 581, 170 P.3d 982, 985 (2007) (“Pure legal issues are reviewed de novo.”);
 
 Westpark Owners’ Ass’n v. Dist. Ct.,
 
 123 Nev. 349, 357, 167 P.3d 421, 426-27 (2007).
 

 [40]
 

 Close
 
 v.
 
 Flanary,
 
 77 Nev. 87, 93, 360 P.2d 259, 263 (1961).
 

 [41]
 

 See
 
 NRS 135.090 (“This chapter shall be so construed and interpreted as to effectuate its general purpose to make uniform the law in those states which enact it.”).
 

 [42]
 

 Westpark,
 
 123 Nev. at 357, 167 P.3d at 427.
 

 [43]
 

 Id.
 

 [44]
 

 See Estate of Gordon
 
 v.
 
 Commissioner,
 
 70 T.C. 404, 408 n.4 (1978);
 
 Belt v. Baser,
 
 383 S.W.2d 657, 659 (Ark. 1964);
 
 In re Meade’s Estate, 39
 
 Cal. Rptr. 278, 280-81, 283 (Ct. App. 1964);
 
 Pannone
 
 v.
 
 McLaughlin,
 
 377 A.2d 597, 605-06 (Md. Ct. Spec. App. 1977).
 

 [45]
 

 See
 
 NRS 135.020 (“Where the title to property or the devolution thereof depends upon priority of death and there is insufficient evidence that the persons died otherwise than simultaneously, the property of each person must be disposed of as if that person had survived, except as provided otherwise in this chapter.”).
 

 [46]
 

 See generally Meade’s Estate,
 
 39 Cal. Rptr. 278;
 
 In re Wedemeyer’s Estate,
 
 240 P.2d 8 (Cal. Ct. App. 1952);
 
 Brown v. Lee,
 
 371 S.W.2d 694 (Tex. 1963);
 
 In re Clise’s Estates,
 
 391 P.2d 547 (Wash. 1964);
 
 In re Saunders’ Estates,
 
 317 P.2d 528 (Wash. 1958).
 

 [47]
 

 Saunders’ Estates,
 
 317 P.2d at 530;
 
 see also Wedemeyer’s Estate,
 
 240 P2d at 10-11;
 
 Brown,
 
 371 S.W.2d at 697.
 

 [48]
 

 Brown, 371 S.W.2d at 696-97.
 

 [49]
 

 See id.
 
 at 697 n.2 (stating that the court followed
 
 Wedemeyer’s Estate,
 
 240 P.2d 8, but reached a different result because, under the statutes in Texas and California, community property passed differently in intestate succession). In California, community property assets passed to a surviving spouse through intestate succession.
 
 Wedemeyer’s Estate,
 
 240 P.2d at 10. In California, however, a second intestate succession statute provided that upon the surviving spouse’s death, any portion of his or her estate that was community property passed to the children of the community or, if none, then half to the heirs of each deceased spouse.
 
 Id.
 
 at 10-11.
 

 [50]
 

 See Wedemeyer’s Estate,
 
 240 P.2d at 11;
 
 Brown,
 
 371 S.W.2d at 697;
 
 Clise’s Estates,
 
 391 P.2d at 548;
 
 Saunders' Estates,
 
 317 P.2d at 529-30.
 

 [51]
 

 See Christensen v. Christensen,
 
 91 Nev. 4, 5, 530 P.2d 754, 754 (1975) (treating life insurance obtained by deduction from husband’s wages as community property without addressing the policy’s nature or character),
 
 superseded by statute,
 
 NRS 123.230,
 
 as recognized in Ennis v. United of Omaha Life Ins. Co.,
 
 825 F. Supp. 962, 965-66 (D. Kan. 1993).
 

 [52]
 

 NRS 135.060, the statute creating the presumption for distribution of community property, would not apply because it specifically states that it does not apply to insurance policies addressed by NRS 135.050. We also note that after the California court decided
 
 Wedemeyer’s Estate,
 
 the Uniform Act was amended to except community property insurance policies from distribution under the insurance section, unless the policy named a surviving alternate beneficiary, and direct the distribution of such proceeds under the section governing community property distribution. Unif. Simultaneous Death Act § 5 (amended 1953). That amendment would presumably result in the distribution of half of the proceeds to each estate, however, Nevada has not adopted a more recent version of the Uniform Act incorporating that amendment.
 

 [53]
 

 See
 
 NRS 123.250(1), which provides, in pertinent part:
 

 [U]pon the death of either husband or wife:
 

 (a) An undivided one-half interest in the community property is the property of the surviving spouse and his or her sole separate property.
 

 (b) The remaining interest:
 

 (1) Is subject to the testamentary disposition of the decedent or, in the absence of such a testamentary disposition, goes to the surviving spouse.
 

 [54]
 

 Wedemeyer’s Estate,
 
 240 P.2d at 11;
 
 Brown,
 
 371 S.W.2d at 697-98.
 

 [55]
 

 Brown,
 
 371 S.W.2d at 698.