## DEAN SCHMANSKI, Appellant, v. KIMBERLY J. SCHMANSKI, Respondent.

No. 30278

August 27, 1999                                        984 P.2d 752

*Feldman, Shaw & DeVore,* Stateline; *Lemons Grundy & Eisenberg,* Reno, for Appellant.

*Allison W. Joffee,* Carson City; *Edward Bernard,* Carson City; *Leslie T. Miller,* Crystal Bay, for Respondent.

---

## OPINION

*Per Curiam:*

Appellant Dean Schmanski and respondent Kim Schmanski were married in 1984 and divorced in 1997. During the divorce proceedings, the distribution of the proceeds of three trusts was at issue. The district court found that the proceeds of the Dean M. Schmanski Trust and the Dean M. Schmanski Charitable Remainder Trust were community property, and divided the proceeds equally between Dean and Kim. Additionally, the district court found that the proceeds of the Dean M. Schmanski Carsonite Trust were 85.12% community property and 14.88% Dean's separate property. Dean filed a timely appeal from the district court's order.

*Dean M. Schmanski Trust and Dean M. Schmanski Charitable Remainder Trust*

In December 1983, and January 1984, prior to Dean and Kim's

marriage, Dean received two gifts of stock of Carsonite International from his father, Don Schmanski. In 1984, Carsonite International was recapitalized and the company's stock split. Based on this split, Dean held 144,000 shares of voting stock.

In 1985, Don sold Carsonite International, and Dean's stock sold for approximately $400,000. Dean received the money in 1985 and 1986. In 1985, he placed some of the proceeds of the sale in a joint account with Kim in the financial institution of Kidder Peabody. In 1986, Dean set up another account, with Dean Witter, for the remainder of the proceeds. The paperwork accompanying the Dean Witter account is labeled "Joint Account Agreement with Right of Survivorship." Funds from the account were used to purchase community items, and a VISA credit card and wallet checks for the account were printed in both Kim's and Dean's names.

In 1989, Don repurchased Carsonite International, and extended an opportunity to Dean, who was employed at Carsonite International, as well as to other employees of Carsonite, to acquire stock in the company. Dean accepted the offer and purchased 90,000 shares of Carsonite International stock. The money used to purchase the stock came from the joint account at Dean Witter.

In 1994, Carsonite International underwent another recapitalization, and the stock split ten to one. Thus, Dean owned 900,000 shares of Carsonite International stock. He subsequently placed these shares in the Dean M. Schmanski Trust, and some shares were later transferred to the Dean M. Schmanski Charitable Remainder Trust. The next year, the stock sold for two dollars per share, for a total of $1.8 million.

Dean argues that the district court erred in finding that the proceeds of the Dean M. Schmanski Trust and the Dean M. Schmanski Charitable Remainder Trust were community property. The district court concluded that NRS 125.150 irrevocably transmutes separate property placed in joint tenancy into community property. However, the district court also concluded that even if NRS 125.150 does not irrevocably transmute separate property placed into joint tenancy into community property, the separate property placed into joint tenancy is presumed to be a gift to the community unless the presumption is overcome by clear and convincing evidence. Gorden v. Gorden, 93 Nev. 494, 497, 569 P.2d 397, 398 (1977).[1]

---

[1]In Sprenger v. Sprenger, 110 Nev. 855, 858, 878 P.2d 284, 286 (1994), this court held that transmutation of separate property into community property must be shown by clear and convincing evidence. That standard of proof does not apply when the owner of the separate property places the property in joint tenancy. In the latter case, a gift to the community is presumed.

We hold that NRS 125.150 does not irrevocably transmute separate property placed into joint tenancy into community property. This statute provides:

> 1. In granting a divorce, the court:
> (b) Shall, to the extent practicable, make an equal disposition of the community property of the parties, except that the court may make an unequal disposition of the community property in such proportions as it deems just if the court finds a compelling reason to do so and sets forth in writing the reasons for making the unequal disposition.
> 2. Except as otherwise provided in this subsection,[1] in granting a divorce, the court shall dispose of any property held in joint tenancy in the manner set forth in subsection 1 for the disposition of community property. . . .[2]

This court has held that when the language of a statute is plain, its intention must be deduced from such language, and this court has no right to go beyond it. Cirac v. Lander County, 95 Nev. 723, 602 P.2d 1012 (1979). We conclude that the plain language of NRS 125.150 does not support a determination that separate property placed into joint tenancy is irrevocably transmuted into community property. NRS 125.150(2) requires the court to "dispose of any property held in joint tenancy in the same manner set forth in subsection 1 for the disposition of community property." It does not mandate that joint tenancy property be transmuted into community property, but only that it be disposed of in the same manner, subject to the other provisions in NRS 125.150(2) regarding joint tenancy property. However, we agree with the district court that in accordance with *Gorden,* separate property placed into joint tenancy is presumed to be a gift to the community unless the presumption is overcome by clear and convincing evidence.

Therefore, we must consider whether the original gifts of stock were transformed into community property. The Dean Witter account was labeled "Joint Account Agreement with Right of Survivorship." Both Dean and Kim signed the account documents, and monthly statements concerning the account were addressed to both of them. Further, wallet checks and a VISA credit card for the Dean Witter account were accessible to both

---

[2]NRS 125.150(2) provides for additional considerations regarding joint tenancy property that are not dispositive here.

parties. The district court's findings of fact supported by substantial evidence will not be set aside unless clearly erroneous. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. Bopp v. Lino, 110 Nev. 1246, 1249, 885 P.2d 559, 561 (1994) (citations omitted). In this case we hold that substantial evidence supports the district court's finding that the proceeds of the Dean M. Schmanksi Trust and the Dean M. Schmanski Charitable Remainder Trust constitute community property.[3]

Dean maintains that even if this court concludes that the joint accounts were community property, the district court erred in not granting him an unequal distribution under NRS 125.150(1)(b) or reimbursement for his contributions under NRS 125.150(2). We disagree. Under NRS 125.150(1)(b), the district court may award an unequal disposition of community property if it finds a compelling reason to do so. We conclude that the record supports the district court's finding that there was no compelling reason to award an unequal disposition of the stock proceeds, and therefore, the district court acted within its discretion in dividing the property equally between Dean and Kim. Therefore, we affirm the district court's distribution of the proceeds of the Dean M. Schmanski Trust and the Dean M. Schmanski Charitable Remainder Trust.

## Dean M. Schmanski Carsonite Trust

In November 1994, Don Schmanski's attorney drafted the Dean M. Schmanski Carsonite Trust (Carsonite Trust). Don testified that his intention was to create a separate property interest in Dean via the Carsonite Trust. His intent was to distribute his estate to his sons over a period of time. Pursuant to the Carsonite Trust's terms, Dean is the trustee and lifetime beneficiary of the trust, and Dean and Kim's children are the residual beneficiaries.

The Carsonite Trust corpus consisted of 756,000 shares of Carsonite International stock. Under the terms of a Stock Sale Agreement drafted by Don's attorney, the Carsonite Trust was required to purchase the stock for $168,000. The Agreement required the Carsonite Trust to make an initial down payment of $25,000, with the balance of $143,000 to be paid over ten years in annual installments of $21,000. The debt was evidenced by a

---

[3]Furthermore, because the opportunity to purchase the stock was given to other employees, as well as Dean, it appears that the proceeds from the 1989 purchase of stock were realized because of Dean's employment, and not only because he was Don's son. Therefore, because the opportunity to purchase the stock was received as a result of his employment during marriage, the proceeds could be considered community property even though the stock was purchased with what originally was a gift before marriage.

promissory note signed by Dean in his capacity as trustee for the trust. Additionally, the sole recourse in the event of a default on the note by the Carsonite Trust was recovery of the Carsonite stock.

Don and his wife provided $25,000 to the Carsonite Trust so it could pay the first installment required by the stock sale agreement. Further, Don testified that he intended to give the Carsonite Trust annual gifts to enable it to make the payments on the note. However, Don sold the business again in early 1995, and the Carsonite Trust sold its stock to the buyer. Therefore, no annual payments of $21,000 were required.

The district court concluded that the $25,000 down payment for stock in the Carsonite Trust was a gift from Don, and therefore Dean's separate property. However, the court found that the $143,000 balance on the promissory note was a community obligation. Therefore, the district court apportioned the Carsonite Trust as 85.12% community property, and 14.88% as Dean's separate property.

■■■■■

Dean maintains that the district court erred in determining that 85.12% of the Carsonite Trust was community property. We agree and therefore reverse the district court's order with respect to this issue.

NRS 123.130, regarding the separate property of spouses, provides in relevant part:

> 2. All property of the husband owned by him before marriage, and that acquired by him afterwards by gift, bequest, devise, descent or by an award for personal injury damages, with the rents, issues and profits thereof, is his separate property.

The record indicates that the funds used to purchase the stock constituting the corpus of the Carsonite Trust were a gift from Don to the Carsonite Trust. According to American Jurisprudence:

> A valid inter vivos gift requires an intention on the part of the donor to make a present transfer, actual or constructive delivery of the gift to the donee, and acceptance by the donee.

38 Am. Jur. 2d *Gifts* § 17 (1999) (footnotes omitted). We conclude that these elements are met here. First, Don's testimony established that his intent was to make a gift to the trust for the benefit of Dean and Dean's children only, and not to create a community property interest in Kim. Second, the stock was transferred directly to the Carsonite Trust, and thus the gift was delivered. Third, Dean accepted the stock on behalf of the trust.

Furthermore, the promissory note evidencing the $143,000 debt was a non-recourse note, and therefore Carsonite International, the creditor, could only pursue the collateral, which was the stock in the Carsonite Trust, in the event of a default. Thus, the $143,000 was not a community debt, and Kim produced no evidence that she would be personally liable if a default on the promissory note occurred. Dean alone signed all of the documents for the Carsonite Trust as trustee. Therefore, it appears that the entire Carsonite Trust was Dean's separate property, subject to the children's interest as residual beneficiaries.

## CONCLUSION

Based on the foregoing, we affirm the district court's order with respect to the Dean M. Schmanski Trust and the Dean M. Schmanski Charitable Remainder Trust. The district court's order distributing these trust proceeds as community property is affirmed. We reverse the district court's order regarding the proceeds of the Dean M. Schmanski Carsonite Trust and remand this case to the district court for a disposition of the Carsonite Trust that is consistent with this opinion.