**133 Nev., Advance Opinion 24**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MATT KLABACKA, DISTRIBUTION TRUSTEE OF THE ERIC L. NELSON NEVADA TRUST DATED MAY 30, 2001, Appellant/Cross-Respondent, vs. LYNITA SUE NELSON, INDIVIDUALLY AND IN HER CAPACITY AS INVESTMENT TRUSTEE OF THE LSN NEVADA TRUST DATED MAY 30, 2001; AND ERIC L. NELSON, INDIVIDUALLY AND IN HIS CAPACITY AS INVESTMENT TRUSTEE OF THE ERIC L. NELSON NEVADA TRUST DATED MAY 30, 2001, Respondents/Cross-Appellants. | No. 66772 **FILED** MAY 25 2017 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |
| MATT KLABACKA, AS DISTRIBUTION TRUSTEE OF THE ERIC L. NELSON NEVADA TRUST DATED MAY 30, 2001, Appellants, vs. ERIC L. NELSON; LYNITA SUE NELSON, INDIVIDUALLY; AND LSN NEVADA TRUST DATED MAY 30, 2001, Respondents. | No. 68292 |

Consolidated appeal and cross-appeal from a decree of divorce and appeal from findings of fact and conclusions of law modifying a divorce decree. Eighth Judicial District Court, Family Court Division, Clark County; Frank P. Sullivan, Judge.

*Affirmed in part, vacated in part, and remanded.*

SUPREME COURT
OF
NEVADA

(O) 1947A

Solomon Dwiggins & Freer, Ltd., and Jeffrey P. Luszeck and Mark A. Solomon, Las Vegas,
for Matt Klabacka, distribution trustee of the Eric L. Nelson Nevada Trust.

Dickerson Law Group and Josef M. Karacsonyi, Robert P. Dickerson, and Katherine L. Provost, Las Vegas,
for Lynita Sue Nelson, individually and in her capacity as investment trustee of the LSN Nevada Trust.

Rhonda K. Forsberg, Chtd., and Rhonda K. Forsberg, Henderson,
for Eric L. Nelson, individually and in his capacity as investment trustee of the Eric L. Nelson Nevada Trust.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, GIBBONS, J.:

These appeals involve a divorce and a division of assets held in self-settled spendthrift trusts owned by the former husband and wife. Suffice it to say, the parties have substantial trust issues. Ten years into their marriage, Eric and Lynita Nelson signed a separate property agreement (the SPA) that transmuted their property into separate property and placed that property into the parties' respective separate property trusts. Later, the parties converted those trusts into self-settled spendthrift trusts (SSSTs) and funded them with their respective separate property. The SSSTs were, respectively, the Eric L. Nelson Nevada Trust (Eric's Trust) and the Lynita S. Nelson Nevada Trust (Lynita's Trust). In 2009, the parties began divorce proceedings and subsequently added the

SUPREME COURT
OF
NEVADA

(O) 1947A

2

SSSTs as necessary parties. Issues presented within the divorce proceedings bring us to the instant appeals.

We conclude (1) the family court has subject-matter jurisdiction over the trust-related claims in the Nelsons' divorce; (2) the SPA and SSSTs are valid and unambiguous; (3) the district court erred in considering parol evidence to determine the parties' intent behind the SPA and SSSTs; (4) the district court erred in equalizing the trust assets; (5) the district court erred in ordering Eric's personal obligations to be paid by Eric's Trust; (6) the district court did not err in awarding Lynita a lump sum alimony award of $800,000, but erred insofar that the alimony was awarded against Eric's Trust, and not Eric in his personal capacity; (7) the district court erred in making findings of unjust enrichment after the claim was dismissed; (8) the constructive trusts placed over the Russell Road and Lindell properties should be vacated; and (9) the June 8, 2015, order should be vacated to the extent it enforces or implements portions of the divorce decree relating to assets in Eric's Trust and Lynita's Trust and affirmed in all other respects.

Given the complexity of the divorce decree (the decree), we conclude that (1) the dissolution of marital bonds between Eric and Lynita is affirmed, (2) the district court's alimony award is affirmed in part but vacated to the extent it is awarded against Eric's Trust instead of Eric in his personal capacity, (3) the district court's child support award is affirmed in part but vacated to the extent it is awarded against Eric's Trust instead of Eric in his personal capacity, (4) all other portions of the decree are vacated, (5) the June 8, 2015, order, is vacated to the extent it enforces or implements portions of the divorce decree relating to assets in Eric's Trust and Lynita's Trust and affirmed in all other respects, and

(6) the case is remanded to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

*The SPA*

In 1993, Eric and Lynita entered into the SPA in order to transmute the family's community assets into the parties' respective separate property. The SPA equally divided the parties' assets into two separate property trusts. Both parties consulted counsel prior to signing the document, and Lynita consulted additional outside counsel prior to her signing.

In relevant part, the SPA states that "the parties hereto desire to split the community estate into the sole and separate property of each spouse in accordance with and for the purposes contained in NRS 123.130 through 123.170, inclusive." Additionally, the SPA provides that "[t]he [p]arties agree that [the SPA] shall be controlling in determining the ownership of each party's property regardless of the manner in which the property was previously held or titled, acquired through capital or personal efforts, or whether the property is real, personal or any variation thereof."

*The SSSTs*

In 2001, Eric and Lynita converted their separate property trusts into Eric's Trust and Lynita's Trust, respectively, and funded the SSSTs with the separate property contained within the separate property trusts. The trust agreements for Eric's Trust and Lynita's Trust are nearly identical. Both trust agreements are in writing and establish an irrevocable trust. Each trust has a spendthrift provision that provides, in relevant part:

No property (income or principal) distributable under this Trust Agreement, . . . shall be subject to anticipation or assignment by any beneficiary, or to attachment by or of the interference or control of any creditor or assignee of any beneficiary, or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder shall be absolutely and wholly void.

Both trust agreements named Lana Martin, a Nevada resident, as the initial distribution trustee.[1] The parties' respective trusts give them the right to veto any distribution and require that the distribution trustee provide ten days' notice of any impending distribution.

The parties named themselves as the investment trustee for their respective trusts. Pursuant to Section 11.14 of the trust agreements,

the "Investment Trustee(s)" shall at all times have the exclusive custody of the entire Trust estate and shall be the legal owner of the Trust estate. The title to Trust properties need not include the name of the Distribution Trustee, and all Trustee powers . . . may be effected under the sole and exclusive control of the Investment Trustees, subject to the requirements for authorization of distributions to Trustor . . . .

---

[1]There have been several distribution trustees for the trusts since 2001. Appellant Matt Klabacka was acting in that capacity when the first notice of appeal was filed.

Many transfers of property occurred between the trusts between 2001 and 2009, most of which were gifts from one trust to the other.

*Initial divorce proceeding*

Eric filed for divorce in 2009. During the initial stages of trial, Eric testified that the SPA and trust agreements were signed in an effort to protect the parties' assets from creditors and that much of the property contained within the trusts was community property. After six days of trial, the SSSTs were added to the divorce action as necessary parties. Lynita then filed an amended complaint against Eric's Trust and its former distribution trustees alleging various torts. Eric's Trust moved to dismiss Lynita's tort claims. The district court dismissed nearly all of the tort claims, including unjust enrichment and breach of fiduciary duty. Additionally, the district court denied the motion to dismiss as to several of Lynita's other claims against Eric and Eric's Trust, including constructive trust.

During the trial, Eric's Trust retained an expert certified public accountant to analyze the trust accounting for both SSSTs. The expert "found no evidence that any community property was transferred to [Eric's Trust] or that any community property was commingled with the assets of [Eric's Trust]." The district court, noting the expert's financial relationship with Eric and the expert's purportedly unreliable testimony, found the expert's report and testimony to be of little probative value.

*Decree of divorce*

On June 3, 2013, the district court issued the decree. The district court found that the SPA was valid and the parties' SSSTs were validly established and funded with separate property. The district court

SUPREME COURT
OF
NEVADA

(O) 1947A

6

kept Eric's Trust and Lynita's Trust intact for creditor-protection purposes. However, the district court noted "the [c]ourt could [have] invalidate[d] both Trusts" under theories of constructive trust or unjust enrichment based on Eric's extensive testimony regarding the community nature of the assets held by each trust, the breaches of Eric's fiduciary duties, and the lack of trust formalities.

Additionally, the district court found "that the testimony of the parties clearly established that the intent of creating the spendthrift trusts was to provide maximum protection from creditors and was not intended to be a property settlement in the event that the parties divorced." The district court based these findings, in large part, on testimony that purportedly established: (1) the parties intended to occasionally *"level off the trusts,"* (2) the trust assets had become community property through Eric's comingling, (3) Lynita had delegated her role as investment trustee to Eric, and (4) an oral transmutation agreement occurred between the parties to transmute the separate property back into community property.

In addition to the dissolution of marriage, the district court ordered: (1) an equalization of $8.7 million in total trust assets to remain in or be transferred into each trust, (2) the Brianhead cabin property to be divided equally between the trusts, (3) the interest in the Russell Road property and its note/deed for rents and taxes be divided equally between the trusts, (4) Eric's Trust to use the distribution of $1.5 million from a previously enjoined trust account to pay Lynita spousal support in a lump sum of $800,000, (5) Eric's Trust to pay Lynita child support arrears; (6) Eric's Trust to pay Lynita's attorney fees, (7) Eric's Trust to pay expert

fees, and (8) Eric to pay child support for each child and half of the private school tuition for his daughter.

*Constructive trusts: Eric's purported breach of fiduciary duty and unjust enrichment*

The district court found that Lynita delegated her role as investment trustee to Eric and that Eric had acted as the de facto investment trustee since the inception of Lynita's Trust. The district court reasoned that, because Eric acted in such a capacity, his actions involving the transfer of property between the trusts and his various corporate entities amounted to a breach of fiduciary duty. Further, the district court reasoned this breach of fiduciary duty resulted in transfers of property that unjustly enriched Eric. This finding of unjust enrichment led to the district court imposing constructive trusts over two properties held within the SSSTs—the Lindell property and the Russell Road property.

*Wyoming Downs and the June 8, 2015, order*

The decree disposed of all property, with the exception of Wyoming Downs, an asset purchased during the pendency of the divorce.[2] A corporate entity owned by Lynita's Trust loaned Eric's Trust money toward the purchase price of Wyoming Downs, and Eric's Trust subsequently purchased the property. Eric testified this loan was paid back. The district court noted it was "without sufficient information" to

---

[2]Eric's Trust petitioned this court for writ relief stemming from the decree on June 21, 2013, and July 9, 2013. We ultimately dismissed both petitions, noting that an appeal would be available to all parties upon the disposition of Wyoming Downs. *See Harber v. Eighth Judicial Dist. Court*, Docket Nos. 63432/63545 (Order Denying Petitions for Writs of Prohibition, May 23, 2014).

make a determination regarding the disposition of Wyoming Downs at the time it issued the decree, and therefore, did not make any findings or decisions as to the disposition of the property in the decree. On September 22, 2014, the district court disposed of Wyoming Downs, thereby making its judgment final. Eric and Eric's Trust subsequently filed their first notice of appeal.

Following the first notice of appeal, Lynita filed a motion with the district court to enforce the decree. Specifically, Lynita sought a court order mandating Eric or Eric's Trust to disclose certain documents and rent payments for, among other things, the Lindell and Russell Road properties. On June 8, 2015, the district court ordered Eric and Eric's Trust to pay the additional monies to Lynita pursuant to her motion to enforce the decree (the June 8, 2015, order). Eric's Trust also appealed the June 8, 2015, order, filing the second notice of appeal.

## DISCUSSION

*Subject-matter jurisdiction of district court to hear trust-related claims*

As a preliminary matter, Eric's Trust argues the family court in which he initiated the divorce lacked subject-matter jurisdiction over the trust-related claims brought during the divorce. We disagree.

Subject matter jurisdiction is a question of law we review de novo. *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009). "[I]f the district court lacks subject matter jurisdiction, the judgment is rendered void." *Landreth v. Malik*, 127 Nev. 175, 179, 251 P.3d 163, 166 (2011).

Eric's Trust contends the family court lacked jurisdiction to hear the trust-related claims in the divorce and that the claims should have instead been heard by a probate judge. Eric's Trust argues that the

trust claims were "a proceeding commenced pursuant to" NRS Title 12 (Wills and Estates of Deceased Persons) or Title 13 (Guardianships; Conservatorships; Trusts), which Eric's Trust argues are under the exclusive jurisdiction of the probate court, citing NRS 166.120 and NRS 164.015(1) to support this proposition. NRS 166.120(2) provides in part:

> Any action to enforce [a spendthrift trust] beneficiary's rights, to determine if the beneficiary's rights are subject to execution, to levy an attachment or for any other remedy must be made only in a proceeding commenced pursuant to . . . NRS 164.010, if against a nontestamentary trust. A court has exclusive jurisdiction over any proceeding pursuant to this section.

Additionally, under NRS 164.015(1), "[t]he court has exclusive jurisdiction of proceedings initiated by the petition of an interested person concerning the internal affairs of a nontestamentary trust." As used in both statutes, "court" is defined as "a district court of this State sitting in probate or otherwise adjudicating matters pursuant to this title." NRS 132.116; *see also* NRS 164.005 (applying NRS 132.116 to trust proceedings under Title 13).

We conclude that this case was not initiated for the purpose of enforcing or determining a spendthrift beneficiary's rights under NRS 164.120(2) or determining the internal affairs of a nontestamentary trust under NRS 164.015(1). Rather, the case was initiated as a divorce proceeding under NRS Chapter 125. Whether a family court has subject-matter jurisdiction in divorce proceedings involving issues outside the

scope of NRS 3.223[3] has been firmly decided by this court. In *Landreth*, this court held a "district court judge sitting in the family court division did not lack the power and authority to dispose of [a] case merely because it involved a subject matter outside the scope of NRS 3.223." 127 Nev. at 180-81, 251 P.3d at 167. The claims at issue here are no different. Accordingly, we reach the same result as we did in *Landreth*—we conclude that the family court had subject-matter jurisdiction over all claims brought in the Nelsons' divorce, including those relating to property held within the SSSTs.

*Validity of the SPA / SSSTs*

Next, we examine the validity of the SPA and the SSST agreements. "When the facts in a case are not in dispute, contract interpretation is a question of law, which this court reviews de novo." *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008). Both the SPA and the parties' respective SSSTs were signed, written agreements. We hold the written instruments at issue here are all valid and the terms therein are unambiguous.

*The SPA is a valid transmutation agreement*

The parties contest the validity of the SPA, and Lynita argues the parties understood and intended the SPA would have no effect in the event of divorce. We conclude the SPA is a valid transmutation agreement, and the plain terms of the SPA indicate it remains in effect during divorce.

---

[3]The powers of family courts are enumerated in NRS 3.223.

NRS 123.220(1) provides that "[a]ll property, other than [separate property outlined] in NRS 123.130, acquired after marriage by either husband or wife, or both, is community property *unless otherwise provided by . . . [a]n agreement in writing between the spouses.*" (Emphasis added.) Additionally, "[w]here a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning." *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281, 21 P.3d 16, 21 (2001) (internal quotation marks omitted). "Extrinsic or parol evidence is not admissible to contradict or vary the terms of an unambiguous written instrument, since all prior negotiations and agreements are deemed to have been merged therein." *Frei v. Goodsell*, 129 Nev. 403, 409, 305 P.3d 70, 73 (2013) (internal quotation marks omitted).

We conclude the SPA is a valid transmutation agreement and that the parties' community property was converted into separate property. The terms of the SPA are clear and unambiguous: the parties agree "to split the community estate into the sole and separate property of each spouse." Lynita argues that, despite these plain terms, the parties intended for the property to remain community property. Lynita's argument fails because, as discussed above, it relies on extraneous evidence—a purported agreement between the parties not contained within the four corners of the SPA—that would contradict the unambiguous language of the SPA. Both parties were apprised of the legal consequences of the agreement by their attorney. Additionally, Lynita had her own outside counsel review the agreement prior to signing and provide additional legal advice regarding the consequences of the SPA. Therefore, we conclude the SPA was valid, and the parties' property

was validly separated into their respective separate property trusts at that time.

*The parties' respective SSSTs are valid*

Lynita argues the district court erred in finding the SSSTs to be validly created under NRS Chapter 166. Lynita contends the trusts should be invalidated because "testimony and evidence presented at trial conclusively established that [Eric's Trust] and [Lynita's Trust] were not valid trusts." We disagree.

For the reasons set forth below, we hold the SSSTs are valid and the trusts were funded with separate property stemming from a valid separate property agreement. Additionally, we conclude the district court had substantial evidence to make its finding of fact and, thus, did not err in finding the parties' SSSTs to be validly created.

*Requirements of a valid SSST in Nevada*

No specific language is necessary to create a spendthrift trust. NRS 166.050. A spendthrift trust is created "if by the terms of the writing (construed in the light of [NRS Chapter 166] if necessary) the creator manifests an intention to create such a trust." *Id.* In addition to the spendthrift requirements, to create a valid SSST, NRS 166.015(2)(a) requires the settlor to name as trustee a person who is a Nevada resident. Further, NRS 166.040(1)(b) provides that the SSST must (1) be in writing, (2) be irrevocable, (3) not require that any part of the trust's income or principal be distributed to the settlor, and (4) not be "intended to hinder, delay or defraud known creditors."

*Validity of Eric's Trust and Lynita's Trust*

To determine the validity of the trusts, one must first look to the words of the trust agreement to determine if the settlor had the intent

to create a spendthrift trust. 76 Am. Jur. 2d *Trusts* § 29 (2016). Accordingly, "courts look first and foremost to the language in the trust and interpret that language to effectuate the intent of the settlors." *Id.* If a trust's language is plain and unambiguous, then courts determine intent from this language alone. *Id.* § 30.

On the contrary, if the meaning of the writing is uncertain, incomplete, or ambiguous, parol evidence of the circumstances is admissible to determine the settlor's intent. Restatement (Third) of Trusts § 21 cmt. a (Am. Law Inst. 2003). However, "parol evidence is not admissible to contradict or vary the terms of an unambiguous written instrument." *Frei*, 129 Nev. at 409, 305 P.3d at 73.

A plain reading of the written terms of Eric's Trust agreement reveals the following: Eric's Trust has a spendthrift provision, manifesting a plain and unambiguous intent to create a spendthrift trust, in accordance with NRS 166.050; Eric's Trust names Lana Martin, a Nevada resident, as distribution trustee, satisfying NRS 166.015(2)(a); the trust agreement is in writing, and the trust is irrevocable; and there is no requirement that any part of the trust's income or principal be distributed to the settlor. Finally, there is no evidence that the trust was created to hinder, delay, or defraud known creditors. Thus, we hold Eric's Trust is a valid Nevada SSST.[4]

---

[4]We note that the parties' respective trust agreements are nearly identical. The analysis here is also applicable to Lynita's Trust, which we also conclude is a valid Nevada SSST.

The validity of the trusts brings into question many of the district court's findings in the decree. As discussed below, the district court found that it could have invalidated the SSSTs based on Eric's purported breach of trust formalities. Breaching trust formalities of an otherwise validly created SSST does not invalidate a spendthrift trust; rather, it creates liability upon the trustee(s) for that breach. Indeed, if, after an SSST is validly formed, the trust formalities are breached by a trustee, the proper remedy is a civil suit against the trustee—not an invalidation of the trust itself. *See* NRS 163.115. Lynita filed such claims against Eric's Trust, and the district court then dismissed many of those claims. As such, we conclude the district court's findings regarding the potential invalidity of Eric's Trust and Lynita's Trust were made in error.

*Tracing trust assets*

The parties contest whether the assets within the SSSTs remained separate property or whether, because of the many transfers of property between the trusts, the assets reverted back to community property. In a divorce involving trust assets, the district court must trace those trust assets to determine whether any community property exists within the trusts—as discussed below, the parties' respective separate property in the SSSTs would be afforded the statutory protections against court-ordered distribution, while any community property would be subject to the district court's equal distribution. We conclude the district court did not trace the assets in question.

Eric's Trust retained a certified public accountant to prepare a report tracing the assets within the two trusts. However, as noted by the district court, the certified public accountant maintained a business relationship with Eric and Eric's Trust for more than a decade. Although

SUPREME COURT
OF
NEVADA

(O) 1947A

15

the certified public accountant's report concluded that there was "no evidence that any community property was transferred to [Eric's Trust] or that any community property was commingled with the assets of [Eric's Trust]," the district court found the report and corresponding testimony to be unreliable and of little probative value. We recognize that the district court is in the best position to weigh the credibility of witnesses, and we will not substitute our judgment for that of the district court here. *See In re Parental Rights as to J.D.N.*, 128 Nev. 462, 477, 283 P.3d 842, 852 (2012). However, the subject of the certified public accountant's report—the tracing of trust assets, specifically any potential commingling of trust assets with personal assets—must still be performed. *See Schmanski v. Schmanski*, 115 Nev. 247, 984 P.2d 752 (1999) (discussing transmutation of separate property and tracing trust assets in divorce). Without proper tracing, the district court is left with only the parties' testimony regarding the characterization of the property, which carries no weight. *See Peters v. Peters*, 92 Nev. 687, 692, 557 P.2d 713, 716 (1976) ("The opinion of either spouse as to whether property is separate or community is of no weight [whatsoever]."). Accordingly, we conclude the district court erred by not tracing the assets contained within the trusts, either through a reliable expert or other available means. Separate property contained within the spendthrift trusts is not subject to attachment or execution, as discussed below. However, if community property exists within the trusts, the district court shall make an equal distribution of that community property. *See* NRS 125.150(1)(b).

*Distribution of parties' assets held in trust*

Having concluded the district court had subject-matter jurisdiction, the written instruments at issue are valid, and the district

court must trace trust assets to determine whether any community property exists within the trusts, we now turn our attention to the district court's various decisions regarding the division of property. Distribution of the parties' assets held in the SSSTs was perhaps the most contested issue in the Nelsons' divorce.

Despite recognizing the validity of the SPA and SSSTs in the decree, the district court made several missteps in fashioning the ultimate distribution of property, namely: (1) considering parol evidence to determine the parties' intent, despite the written instruments at issue being unambiguous; (2) equalizing assets held within the valid SSSTs; and (3) ordering Eric's personal obligations to be paid by a trust for which he is a beneficiary.

*The district court erred by using parol evidence to determine the intent of the parties' respective trusts*

The district court ordered the trust assets equalized between Eric's Trust and Lynita's Trust, and for Eric's personal obligations to be paid by Eric's Trust. In order to fashion these remedies, the district court improperly considered parol evidence—namely, testimony from Eric and Lynita regarding their purported intent. We hold the district court abused its discretion in doing so.

"Where a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning." *Kaldi*, 117 Nev. at 281, 21 P.3d at 21 (internal quotation marks omitted). "Extrinsic or parol evidence is not admissible to contradict or vary the terms of an unambiguous written instrument, since all prior negotiations and agreements are deemed to have been merged therein." *Frei*, 129 Nev. at 409, 305 P.3d at 73 (internal quotation marks omitted). This court "review[s] a district court's decision to admit or exclude evidence for abuse

SUPREME COURT
OF
NEVADA

(O) 1947A

of discretion, and we will not interfere with the district court's exercise of its discretion absent a showing of palpable abuse." *Id.* at 408-09, 305 P.3d at 73.

Here, both Eric's Trust and Lynita's Trust are valid Nevada SSSTs with plain, unambiguous language indicating a clear intent to create a spendthrift trust. Where, as here, a valid SSST agreement is clear and unambiguous, the district court may not consider the parties' testimony regarding their purported intent when fashioning remedies related to that SSST. 76 Am. Jur. 2d *Trusts* § 30 (2016). The parties' inconsistent testimony regarding the purported community or separate property characterization of the trust assets carries no weight and should not have been considered when the district court fashioned the property division. *See Peters*, 92 Nev. at 692, 557 P.2d at 716. Accordingly, the district court was precluded from considering this extrinsic evidence to discern the parties' intent, and the district court abused its discretion in doing so.

*The district court erred in equalizing the trust assets*

Eric's Trust argues that, in addition to improperly considering parol evidence, the district court erred by ordering the trust assets to be equalized and Eric's Trust to pay Eric's personal obligations—namely, child support arrears and spousal support. We agree.

This court defers to a district court's findings of fact and will only disturb them if they are not supported by substantial evidence. *Ogawa*, 125 Nev. at 668, 221 P.3d at 704. Questions of law, including statutory interpretation, are reviewed de novo. *Waldman v. Maini*, 124 Nev. 1121, 1136, 195 P.3d 850, 860 (2008).

NRS Chapters 163 and 166 evince a clear intention to protect spendthrift trust assets against court order.[5] NRS 163.417(1)(c)(1) provides that "a court may not order the exercise of ... [a] trustee's discretion to ... [d]istribute any discretionary interest." Additionally, NRS 166.120(2) provides in relevant part:

> Payments by the trustee to the beneficiary ... must be made only to or for the benefit of the beneficiary and not ... upon any order, written or oral, given by the beneficiary, whether such ... order ... be made pursuant to or by virtue of any legal process in judgment, execution, attachment, garnishment, bankruptcy or otherwise, or whether it be in connection with any contract, tort or duty.

Finally, NRS 166.120(3) uses mandatory language indicating the beneficiary lacks the ability to make dispositions of trust property, even in response to a court order. NRS 166.120(3) provides:

> [A spendthrift trust beneficiary] shall have no power or capacity to make any disposition whatever of any of the income ... whether made upon the order or direction of any court or courts,

---

[5]We note that these protections do not apply if a court order is enforcing a judgment levied against the trust by a creditor able to prove, by clear and convincing evidence, that a "transfer of [trust] property was a fraudulent transfer pursuant to chapter 112 of NRS or that the transfer violates a legal obligation owed to the creditor under a contract or a valid court order that is legally enforceable by that creditor." NRS 166.170(3). The court order at issue here, the decree, is not legally enforceable because it requires Eric or the trustees of Eric's Trust to violate NRS 166.120. We note the record here does not indicate that a fraudulent transfer under NRS 166.170(3) occurred between the SSSTs.

whether of bankruptcy or otherwise; nor shall the interest of the beneficiary be subject to any process of attachment issued against the beneficiary, or to be taken in execution under any form of legal process directed against the beneficiary or against the trustee, or the trust estate, or any part of the income thereof, but the whole of the trust estate and the income of the trust estate shall go to and be applied by the trustee solely for the benefit of the beneficiary, free, clear, and discharged of and from any and all obligations of the beneficiary whatsoever and of all responsibility therefor.

We conclude the statutory framework governing SSSTs does not allow a court to equalize spendthrift trust assets between or among different SSSTs. Such an equalization would require the district court to order the exercise of a trustee's discretion to distribute some discretionary interest, in contravention of NRS 163.417(1)(c)(1). Additionally, such a court order would require the trustee to make a distribution outside the scope of the trust agreement and, perhaps more importantly, would run afoul of NRS 166.120(2), which prohibits payments made pursuant to or by virtue of any legal process. Finally, pursuant to NRS 166.120(3), Eric, as the beneficiary of Eric's Trust, has no power to make any disposition of any of Eric's Trust income upon order of the district court. Thus, we conclude the district court erred in ordering trust assets to be equalized between Eric's Trust and Lynita's Trust.

*The district court erred in ordering Eric's personal obligations to be paid by Eric's Trust*

The district court also ordered Eric's Trust to satisfy Eric's personal obligations—specifically, Eric's child- and spousal-support arrears. In doing so, the district court relied upon SSST statutes from South Dakota and Wyoming, as well as caselaw from Florida, which

SUPREME COURT
OF
NEVADA

(O) 1947A

20

specifically allow for SSST assets to be reached to satisfy child and spousal support. The statutes and caselaw relied upon by the district court annunciate public policy concerns for allowing spendthrift trusts to be reached for child and spousal support. *See Gilbert v. Gilbert*, 447 So. 2d 299, 301 (Fla. Dist. Ct. App. 1984) ("The cardinal rule of construction in trusts is to determine the intention of the settlor and give effect to his wishes. . . . On the other hand, there is a strong public policy argument which favors subjecting the interest of the beneficiary of a trust to a claim for alimony. . . . [T]he obligation to pay alimony is a duty, not a debt." (internal quotation marks omitted)); *see also* S.D. Codified Laws § 55-16-15(1) (2016) (providing that many of South Dakota's statutory spendthrift trust protections "do[ ] not apply in any respect to any person to whom at the time of transfer the transferor is indebted on account of an agreement or order of court for the payment of support or alimony in favor of the transferor's spouse, former spouse, or children, or for a division or distribution of property in favor of the transferor's spouse or former spouse, to the extent of the debt"); Wyo. Stat. Ann. § 4-10-503(b) (2015) ("Even if a trust contains a spendthrift provision, a person who has a judgment or court order against the beneficiary for child support or maintenance may obtain from a court an order attaching present or future distributions to, or for the benefit of, the beneficiary."). The district court also cites to the Restatement (Third) of Trusts § 59 (Am. Law Inst. 2003), which provides "[t]he interest of a beneficiary in a valid spendthrift trust can be reached in satisfaction of an enforceable claim against the beneficiary for . . . support of a child, spouse, or former spouse."

We conclude the district court's order runs contrary to Nevada law. Despite the public policy rationale used in the other jurisdictions,

SUPREME COURT
OF
NEVADA

(O) 1947A

21

Nevada statutes explicitly protect spendthrift trust assets from the personal obligations of beneficiaries. Indeed, "[p]rovision for the [spendthrift trust] beneficiary will be for the support, education, maintenance and benefit of the beneficiary alone, and *without reference to . . . the needs of any other person, whether dependent upon the beneficiary or not.*" NRS 166.090(1) (emphasis added).

The legislative history of SSSTs in Nevada supports this conclusion. It appears that the Legislature enacted the statutory framework allowing SSSTs to make Nevada an attractive place for wealthy individuals to invest their assets, which, in turn, provides Nevada increased estate and inheritance tax revenues. *See* Hearing on A.B. 469 Before the Assembly Judiciary Comm., 70th Leg. (Nev., Mar. 26, 1999) (statement of Assemblyman David Goldwater). When crafting the language to allow SSSTs, the Legislature contemplated a statutory framework that protected trust assets from unknown, future creditors, as opposed to debts known to the settlor at the time the trust was created. *See id.* The legislative history explicitly mentions child support as an example of a debt that would not be free from attachment *if known at the time the trust was created. Id.* However, the trust assets would be protected from attachment as to debts unknown at the time the trust was created—presumably, this protection extended to child- and spousal-support obligations unknown at the time the trust was created. Additionally, in 2013, the Legislature proposed changes to NRS Chapter 166 that would have allowed a spouse or child to collect spousal support or child support from otherwise-protected spendthrift trust assets. *See* Hearing on A.B. 378 Before the Senate Judiciary Comm., 77th Leg. (Nev., May 8, 2013) (statement of Assemblywoman Marilyn Dondero Loop).

However, the proposed changes to NRS Chapter 166 did not pass, and, as a result, the Nevada spendthrift trust statutes were not amended to allow for an exception for child- and spousal-support orders of a beneficiary to be enforced against a spendthrift trust.

This rigid scheme makes Nevada's self-settled spendthrift framework unique; indeed, the "key difference" among Nevada's self-settled spendthrift statutes and statutes of other states with SSSTs, including Florida, South Dakota, and Wyoming, "is that Nevada abandoned the interests of child- and spousal-support creditors, as well as involuntary tort creditors," seemingly in an effort to "attract the trust business of those individuals seeking maximum asset protection." Michael Sjuggerud, *Defeating the Self-Settled Spendthrift Trust in Bankruptcy*, 28 Fla. St. U. L. Rev. 977, 986 (2001).

We conclude Nevada SSSTs are protected against the court-ordered child-support or spousal-support obligations of the settlor/beneficiary that are not known at the time the trust is created.[6]

---

[6]We note the possible confusion between our conclusion here protecting spendthrift trust assets from the personal child- and spousal-support obligations of the beneficiary and our conclusion above requiring the court to dispose of community property within the spendthrift trust. To clarify: because the nonbeneficiary spouse retains a property interest in community property contained within the spendthrift trust, the restraints on the court-ordered alienation of spendthrift trust assets would not apply to the nonbeneficiary spouse's community property share of that property. Accordingly, the district court's equal distribution of community property pursuant to the dissolution of marriage does not implicate the protections against a trust being ordered to pay the personal obligations of a beneficiary articulated in NRS Chapters 163 and 166.

Here, Eric's child- and spousal-support obligations were not known at the time the trust was created. Accordingly, the district court abused its discretion in ordering Eric's Trust to pay Eric's child- and spousal-support arrears. We further conclude the child- and spousal-support exception articulated in section 59 of the Third Restatement of Trusts is inconsistent with Nevada's statutory framework and the legislative history of NRS Chapter 166, and we expressly reject that exception here.

*The district court did not err in awarding spousal support as a lump sum but erred in ordering it paid by Eric's Trust*

In his individual capacity, Eric argues the amount of spousal support awarded to Lynita was inequitable and should not have been awarded in a lump sum. Eric argues that the $800,000 lump sum alimony award was not just and equitable considering the NRS 125.150(9) factors because Lynita can adequately support herself on trust income. We disagree.

The district court "[m]ay award such alimony . . . in a specified principal sum or as specified periodic payments, as appears just and equitable." NRS 125.150(1)(a). Additionally, this court reviews an award of spousal support for an abuse of the discretion. *Gardner v. Gardner*, 110 Nev. 1053, 1055-56, 881 P.2d 645, 646 (1994); *see also Williams v. Waldman*, 108 Nev. 466, 471, 836 P.2d 614, 617 (1992) (noting this court generally affirms district courts' rulings in divorce proceedings where supported by substantial evidence and free from appearance of abuse of discretion).

We conclude the district court did not abuse its discretion in awarding spousal support. The district court properly considered the factors under NRS 125.150(9). Additionally, the court has discretion to

award spousal support as a lump sum or a periodic payment, and, here, we conclude the district court did not abuse that discretion in awarding a lump sum. *See Sargeant v. Sargeant*, 88 Nev. 223, 228, 495 P.2d 618, 622 (1972) (affirming a lump sum award of spousal support where the husband's conduct indicated the possibility he might liquidate or interfere with his assets to avoid paying support). However, we conclude the only error was in ordering the spousal support to be paid by Eric's Trust instead of by Eric because, as noted above, Nevada's statutory framework explicitly protects spendthrift trust assets from the personal obligations of beneficiaries—in this case, Eric. Accordingly, we vacate the award in order for the district court to reassess that award against Eric in his personal capacity.

*Unjust enrichment, constructive trusts, and the delegation of Lynita's role as investment trustee of Lynita's Trust*

The district court found that Lynita delegated to Eric her role as investment trustee of Lynita's Trust. Based on this delegation, the district court found that Eric had a fiduciary duty to disclose pertinent facts related to the transfer of assets held by Lynita's Trust. The district court found Eric breached this fiduciary duty by not disclosing that information.

*The district court erred in relying upon a dismissed claim of unjust enrichment to afford relief*

Based on this purported breach, the district court provided relief upon a theory of unjust enrichment when imposing constructive trusts over two contested properties. Eric's Trust contends the district court improperly relied upon a theory of unjust enrichment to fashion its remedies. Eric's Trust argues that, because a claim of unjust enrichment was dismissed without prejudice and never repleaded, the district court

Supreme Court
OF
Nevada

(O) 1947A

25

could not rely upon that claim to assess damages or provide relief. Additionally, Eric's Trust argues that at no point in the trial transcript is the phrase "unjust enrichment" used—accordingly, there could not have been consent. Lynita argues that a claim of unjust enrichment was tried by express or implied consent because the pleadings in the case conformed to evidence demonstrating that Eric was being unjustly enriched by way of his power over Lynita's Trust.

This court defers to a district court's findings of fact and will only disturb them if they are not supported by substantial evidence. *Ogawa*, 125 Nev. at 668, 221 P.3d at 704. Questions of law are reviewed de novo. *Waldman*, 124 Nev. at 1136, 195 P.3d at 860.

We conclude the district court erred in relying upon a dismissed claim to afford relief to the parties. We further conclude Eric's Trust did not expressly or impliedly consent to the claim being tried. Indeed, Eric's Trust moved to dismiss the claim of unjust enrichment; this alone evinces the trust's lack of express consent for the claim. Further, the crux of Eric's Trust's entire argument was that trust formalities and property transactions were done legally and in accordance with the trust agreement—in other words, Eric's Trust argues that Eric was justified in his actions, running contrary to any notions of unjust enrichment. We conclude Lynita's claims of express consent for the claims of unjust enrichment fail.

Likewise, we conclude Lynita's argument on implied consent fails. Implied consent is a high threshold. For example, this court has determined that an issue was tried by implied consent where counsel "had raised the issue in his opening argument, [opposing counsel] had specifically referred to the matter as an issue in the case, . . . the factual



issue had been explored in discovery, [and] no objection had been raised at trial to the admission of evidence relevant to the issue." *Schwartz v. Schwartz*, 95 Nev. 202, 205, 591 P.2d 1137, 1140 (1979). Lynita's unjust enrichment claim fails to meet this standard. The phrase "unjust enrichment" was not used during trial; it therefore was not specifically referred to as an issue in the case following its dismissal. Eric's Trust moved to dismiss it, which demonstrates an objection was raised to the admission of evidence relevant to the issue. Therefore, we hold the issue of unjust enrichment was not tried by implied consent and, therefore, the district court erred in considering it when fashioning its remedies in the decree.[7]

*The district court erred in placing constructive trusts over the Russell Road and Lindell properties*

Eric's Trust argues the district court erred in its imposition of a constructive trust over the Russell Road and Lindell properties, while Lynita argues the imposition of the constructive trusts was proper because of Eric's purported breaches of fiduciary duty as a de facto investment trustee of Lynita's Trust. Consistent with our analysis in the above sections, we conclude the constructive trusts should be vacated.

"A constructive trust is a remedial device by which the holder of legal title to property is held to be a trustee of that property for the benefit of another who in good conscience is entitled to it." *Locken v. Locken*, 98 Nev. 369, 372, 650 P.2d 803, 804-05 (1982). Although remedial,

---

[7]This court makes no conclusions regarding the merits of Lynita's trust-related tort claims. However, we conclude the district court exceeded its authority to make findings based upon a dismissed claim.

SUPREME COURT
OF
NEVADA


(O) 1947A

a constructive trust is "the result of judicial intervention." Restatement (Third) of Trusts § 1 cmt. e (Am. Law Inst. 2003). Additionally, a constructive trust violates a spendthrift prohibition on assignment or alienation of benefits. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376-77 (1990).

We conclude the district court erred in placing constructive trusts over the Russell Road and Lindell properties because the imposition of a constructive trust violates the statutory protections shielding spendthrift trusts from court order. *See* NRS 166.120; *see also* NRS 163.417(1)(c)(1). Placing a constructive trust over assets in a valid spendthrift trust violates the trust's prohibition on assignment or alienation of assets. *See, e.g., Guidry*, 493 U.S. at 376-77 (holding imposition of a constructive trust over a pensioner's ERISA benefits violated the plan's spendthrift provisions and that statutorily defined spendthrift protections "reflect[ ] a considered . . . policy choice, a decision to safeguard a stream of income for pensioners . . . even if that decision prevents others from securing relief [from the assets protected by spendthrift provision]").[8] Accordingly, we conclude the district court erred in imposing equitable remedies over assets that were held in a valid SSST.

---

[8]Although we reach a result here that is similar to the result in *Guidry*, we recognize there are several factual distinctions between *Guidry* and the instant appeals. Here, the parties are not arguing over pension benefits, they are arguing over assets held in SSSTs. Here, the trusts are not created by federal statute, they are enacted by state law. Despite these differences, *Guidry* demonstrates that, at least with respect to certain spendthrift provisions, the imposition of equitable remedies runs afoul of the protections afforded by those spendthrift provisions. Additionally, like the congressionally approved ERISA provisions, we

*continued on next page . . .*

*The June 8, 2015, order*

Lastly, Eric's Trust and Eric argue the district court lacked subject-matter jurisdiction to enter the June 8, 2015, order because the order was entered after the final order and during the pendency of the first appeal.

The district court can enforce an order that is pending on appeal and retains jurisdiction over matters that are collateral and independent from the order appealed, such as attorney fees. *See Foster v. Dingwall*, 126 Nev. 49, 52, 228 P.3d 453, 455 (2010). We conclude that although the district court retains jurisdiction to enforce an order during the pendency of an appeal, most of the June 8, 2015, order will nonetheless be vacated because it concerns property distribution that will be vacated pursuant to this opinion. We therefore vacate the June 8, 2015, order to the extent it enforces or implements portions of the divorce decree relating to assets in Eric's Trust and Lynita's Trust, which are being reversed in this opinion. However, we affirm the June 8, 2015, order with respect to the directives regarding health care costs of the son and Lynita's insurance costs, Eric's payment of costs to remove the security gate, and attorney fees for contempt.

---

*. . . continued*

conclude the self-settled spendthrift provisions of NRS Chapter 166 reflect a considered legislative policy choice, and if exceptions to the policy are to be made for equitable remedies, it is for the Legislature to undertake that task.

## CONCLUSION

Accordingly, we affirm in part and vacate in part the district court's decree of divorce, affirm in part and vacate in part the district court's June 8, 2015, order modifying and implementing the divorce decree, and remand this matter for further proceedings consistent with this opinion.[9]

_____, J.
Gibbons

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____

[9]We have considered the parties' other arguments and conclude they are without merit.